UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

**\*\*  CAPITAL CASE  \*\***

CIVIL ACTION NO. 06-CV-22-KKC

BRIAN KEITH MOORE                                                                    PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

JOHN D. REES, ET AL.                                                           DEFENDANTS

The following motions are presently before the Court:

1.    Moore's motion for a preliminary injunction barring the Defendants from
      scheduling or carrying out his execution [Record No. 5]

2.    Moore's motion for the Court to reconsider its prior order quashing the
      deposition subpoena for Kentucky Governor Ernie Fletcher [Record No. 54]

3.    Moore's motion to compel the Defendants to disclose Kentucky's
      electrocution protocol [Record No. 80]

4.    Moore's motions for permission to depose Defendant execution team
      members [Record Nos. 81, 110]

5.    Moore's motion to compel the Defendants to gather data during their
      attempts to draw blood from Moore [Record No. 82]

6.    Moore's motion to compel the Defendants to provide answers to his
      discovery requests [Record No. 83]

These motions will be addressed in turn.

**I.    Preliminary Injunctive Relief**

On the same day he filed his complaint in the present action, Moore filed a motion seeking

a temporary restraining order and a preliminary injunction to prevent the Defendants from either

scheduling or carrying out his execution. [Record No. 5].  In his motion, Moore alleged that

"[d]efendants have signaled their intent to execute Moore before he can finish litigating his federal habeas corpus proceedings, let alone this challenge to Kentucky's lethal injection chemicals and procedures.  Unless the Supreme Court of the United States or this Court intervenes, Defendants could execute Moore in a few months or less."  Motion at ¶5.  In essence, Moore seeks a preliminary injunction that would prevent his execution until this Court can reach the merits of his claims in this action.  Motion at ¶9.  Moore argues that the evidence attached to his motion indicates a strong likelihood that he will prevail on his Eighth Amendment claims, and that he will suffer irreparable harm if a stay is not granted because his execution will render his meritorious claims moot.

In their Response [Record No. 88], Defendants counter that Moore's likelihood of success on the merits of his claim is minimal because, after substantial pretrial discovery and trial, Kentucky state courts have upheld Kentucky's lethal injection protocol against a substantially-identical Eighth Amendment challenge by other, similarly situated death row inmates.  The Court is further aware that the trial court's determination has recently been upheld by the Kentucky Supreme Court.  *Baze v. Rees*, Ky., 2006 WL 3386544 (2006).  Defendants also cite *Nelson v. Campbell*, 541 U.S. 637 (2004), for the proposition that, under these circumstances, the fact of Plaintiffs' imminent death does not constitute irreparable harm.  Defendants contend that the public and the state have a substantial public interest in having their lawful judgments carried out, and that the public interest counsels against granting a stay.

In reply Moore alleges, among other things, that he did not unduly delay in bringing this suit because Kentucky did not disclose the names and quantities of the chemicals used in its lethal injection protocol until August 2004, and even then released no further information regarding the lethal injection protocol [Record No. 89].

-2-

In most instances, courts perform a traditional four-factor analysis to determine whether to grant injunctive relief:

    1.  whether the movant has demonstrated a strong likelihood of success on the merits;

    2.  whether the movant would suffer irreparable injury without the injunction;

    3.  whether the injunction would cause substantial harm to others; and

    4.  whether the injunction would serve the public interest.

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2006); *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*).

Granting injunctive relief may be particularly appropriate,  where necessary, to preserve the court's ability to render a meaningful decision on the merits.  *United Food & Comm. Workers' Union, Local 1099 v. Southwest Ohio Reg. Trans. Auth.*, 163 F.3d 341, 348 (6th Cir. 1998). However the Supreme Court has discouraged district courts from granting relief where a death row inmate brings a last-minute claim to forestall execution:

> Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim.  Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

*Nelson*, 541 U.S. at 649-50.

The Court must first assess the strength of Moore's case on a preliminary basis.[1]  In his motion, Moore asserts that:

    1.    Because he has compromised peripheral veins, the Defendants' means of

---

[1]  The Court's factual and legal conclusions here are based upon the limited nature of the record before it, and are accordingly not binding upon the parties in subsequent proceedings or upon a full trial on the merits.  *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

inserting an I.V. line creates an unnecessary risk of pain and suffering;

2.     the use of pancurium bromide as the second chemical violates evolving standards of decency;

3.     the failure to administer an analgesic creates an unnecessary risk of pain and suffering;

4.     each of the chemicals used in the protocol creates an unnecessary risk of pain and suffering;

5.     the manner in which the chemicals are injected and the inadequate training of the execution team members create an unnecessary risk of pain and suffering;

6.     the failure to monitor Moore for consciousness after the first and second chemicals have been injected creates an unnecessary risk of pain and suffering;

7.     the failure to maintain proper life-saving equipment in the event a stay of execution is granted after the first and second chemicals have been injected creates an unnecessary risk of pain and suffering;

8.     the Defendants' failure to correct these deficiencies after becoming aware of them constitutes deliberate indifference to Moore's serious medical needs; and

9.     Moore's physical condition increases the risk that each of the foregoing will result in unnecessary pain and suffering.

Motion at pgs. 2-3.  In support of these claims, Moore has attached 11 exhibits to his motion, which include copies of various orders and memoranda entered in other cases asserting similar method-of-execution claims in different courts.  Moore's complaint is not verified and he has not offered any authenticated documents or sworn statements from medical experts as to his medical condition, the lethal injection protocol or the alleged effects of the chemicals used in the protocol.  In sum, he has offered no evidence in support of his factual allegations.  The Court therefore has no evidentiary record upon which it may permissibly conclude that Moore has demonstrated any likelihood of

success on the merits, let alone a "strong" or "substantial" one.

Even assuming the truth of Moore's allegations and the medical testimony referenced in opinions of other courts, such evidence must be balanced against that offered by the Defendants. Here, Defendants offer little factual evidence specific to Moores' claims. Rather, Defendants note that the Kentucky Supreme Court has upheld the Kentucky Department of Corrections' ("KDOC")'s lethal injection protocol against an Eighth Amendment challenge. *Baze v. Rees*, 2006 WL 3386544 (2006). Defendants further note that despite a number of challenges, the strong majority of courts have upheld the constitutionality of lethal injection procedures that are substantially identical to Kentucky's. *See* cases cited at Defendants' Response at pg.3, n.1.

While neither the Supreme Court nor the Sixth Circuit has directly addressed the constitutionality of death by lethal injection, the Ninth Circuit has recently concluded that death by lethal injection is constitutional. *Cooper v. Rimmer*, 379 F.3d 1029, 1033 (9th Cir. 2004) (noting that 37 of the 38 death penalty states use lethal injection). As one federal court in California recently observed:

> In most if not all of the legal challenges to lethal injection, condemned inmates have suggested various errors that could occur during the administration of sodium thiopental, thereby rendering the patient conscious when the pancurium bromide and potassium chloride are administered. However, 'the risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review', and the courts that have considered the issue to date have found that the likelihood of such an error occurring is so remote as to be nonexistent.

*Morales v. Hickman*, 415 F.Supp.2d 1037, 1044 (N.D.Cal. 2006) (internal quotations marks removed) (quoting *Campbell v. Wood*, 18 F.3d 662, 687 (9th Cir. 1994)). The Texas Court of Criminal Appeals similarly noted:

> Applicant's claim, simply put, is that the lethal injection chemicals used by TDCJ could cause a painful death. Applicant offers neither evidence--much less scientific

or medical data, peer-reviewed journal articles, expert affidavits, or controlled scientific studies--nor law to support this scientifically-based medical claim. But numerous courts across this nation have rejected claims similar to applicant's--some after extensive evidentiary hearings, others based upon the face of the pleading.

*Ex Parte O'Brien*, No. 51-264-03 (Tex.App. May 17, 2006) (concurring statement of Cochran, J.) (citing *Abdur'Rahman v. Bredesen*, Tenn., 181 S.W.3d 292 (2005); *Reid v. Johnson*, 333 F.Supp.2d 543 (E.D.Va. 2004); *Sims v. State*, Fla., 754 So.2d 657 (2000); *State v. Webb*, Conn., 252 Conn. 128 (2000); *State v. Deputy*, Del.Super., 644 A.2d 411 (1994); *Bieghler v. State*, Ind., 839 N.E.2d 691 (2005); *Boyd v. Beck*, 404 F.Supp.2d 879 (E.D.N.C. 2005); *LaGrand v. Stewart*, 133 F.3d 1253 (9th Cir. 1998); *Woolls v. McCotter*, 798 F.2d 695 (5th Cir. 1986); *Hill v. Lockhart*, 791 F.Supp. 1388 (E.D.Ark. 1992); *Cooper v. Rimmer*, 358 F.3d 659 (9th Cir. 2004)). Thus, in assessing Moores' likelihood of success on the merits, the facts and legal precedent tends to be in Defendants' favor.

In evaluating whether the movant will suffer irreparable harm absent relief, a court may consider: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Michigan Coalition of Radioactive Materials Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Moore asserts that he will suffer irreparable harm if a stay is not granted because the Defendants are likely to carry out his execution before this case may be decided on its merits. Viewed in isolation, the risk articulated by Moore would plainly constitute irreparable harm. However, courts have routinely rejected claims of irreparable harm where the harm will not be the result of the absence of a stay, but rather of the movant's own conduct. *Wedgewood Village Pharmacy, Inc. v. Ashcroft*, 293 F.Supp.2d 462, 464 (D.N.J. 2003). It is this general principle which prompted the Supreme Court in *Nelson* to determine that a stay is not appropriate when the inmate has unnecessarily delayed in bringing his claim. Moore's conviction became final in 1990. Although Kentucky did not adopt lethal injection as the

presumptive method of execution until 1998, Moore concedes that general information regarding the protocol was released as early as 2004. It is particularly noteworthy that Moore did not join fellow death row inmates Ralph Baze and Claude Bowling in raising a nearly identical claim in the Kentucky state courts in 2004. Moore offers no explanation for his decision. However, his failure to raise his claim is unlikely as his counsel in this litigation also represented the inmates in the *Baze* case.

The Court therefore must conclude that Moore's delay in bringing this suit is unreasonable and that the *Nelson* presumption against granting injunctive relief applies in this case. Further, the Court finds that the alleged irreparable harm is not likely to occur. Nearly a year has passed since Moore first alleged that a death warrant would issue shortly, and as of this date, none has issued. This Court has entered an order requiring the parties to notify it immediately if a death warrant is issued. Further, Moore has successfully sought an order from another court requiring DNA testing of certain evidence relevant to his underlying conviction, and hence the likelihood that a death warrant will issue before that case can be decided on the merits is highly unlikely. For the foregoing reasons, the Court concludes that the alleged irreparable harm is unlikely to occur.

The third prong, potential for substantial harm to third parties, has little if any bearing here. The public, however, has a substantial interest in the outcome of this case. *Pell v. Procunier*, 417 U.S. 817, 830 n.7 (1974). On the one hand, "[e]quity must take into consideration the State's strong interest in proceeding with its judgment and [plaintiff's] obvious attempt at manipulation." *Gomez v. United States District Court for the Northern Dist. of California*, 503 U.S. 653, 654 (1992) (*per curium*). Balanced against the need to avoid unnecessary or abusive delays is society's interest in ensuring that the execution of one of its own citizens is carried out in full accord with this nation's

constitutional principles.  But no litigant should be allowed to trumpet adherence to the latter principle as a clever device to cripple the former.[2]

Moore's conviction became final in 1990, but nearly twenty years later his death sentence has yet to be carried out while he has pursued various collateral attacks on his conviction.  The Supreme Court's admonitions in both *Nelson* and *Hill* counsel against granting a stay of execution as a matter of course.  In light of the foregoing factors and the absence of any apparent exigency compelling a stay at this juncture, the public interest plainly counsels against granting injunctive relief.  *Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment.").

In addition, the same arguments pressed by Moore have been presented to numerous other courts.  Many of those courts have rejected these arguments and denied injunctive relief; stays entered by courts that have accepted these arguments have been vacated shortly thereafter.  *See Cooey v. Taft*, 04-1156-GLF, Southern District of Ohio [Record Nos. 45 (granting stay), 92 (granting stay), 123 (stay vacated by Sixth Circuit), 124 (denying stay), 137 (denying stay)]; *Oken v. Sizer*, 321 F.Supp.2d 658 (D.Md. 2004) (granting stay on June 14, 2004), *reversed*, *Sizer v. Oken*, 542 U.S. 916 (2004) (stay vacated June 16, 2004); *Alley v. Little*, 2006 WL 1454740 (M.D.Tenn. 2006) (granting stay on May 11, 2006), *reversed*, *Alley v. Little*, 2006 WL 1313365 (6th Cir. 2006) (vacating stay on May 12, 2006, noting that Supreme Court did not exercise its authority to enter a nationwide stay of executions pending its decision in *Hill*); *Evans v. Saar*, 412 F.Supp.2d 519 (D.Md. 2006) (denying method of execution claim by death row inmate with compromised peripheral veins).  *See also White v. Johnson*, 429 F.3d 572, 573-74 (5th Cir. 2005) (denying stay), *petition for stay of execution denied*

---

[2] Alexander Bickel best described the tension between these two irreducible values in *The Least Dangerous Branch* (1962) when he stated, "No good society can be unprincipled; and no viable society can be principle-ridden."

*sub nom.*, *White v. Livingston*, 126 S.Ct. 601 (2005); *Cooper v. Rimmer*, 379 F.3d 1029, 1031-33 (9th Cir.2004) (affirming denial of stay); *Harris v. Johnson*, 376 F.3d 414, 416-18 (5th Cir. 2004) (denying stay); *Rutherford v. Crosby*, 438 F.3d 1087, 1092 (11th Cir.) ("The district court was fully justified in applying the *Gomez/Nelson* equitable principles to bar Rutherford's request for an injunction against his execution by lethal injection."), *vacated on other grounds*, *Rutherford v. McDonough*, 126 S.Ct. 2915, *aff'd on remand*, *Rutherford v. McDonough*, 466 F.3d 970, 975 (11th Cir. 2006) (a stay should be denied where the "[plaintiff is] the architect of the very trap from which he now seeks relief.").

Accordingly, Moore's motion for a preliminary injunction will be denied.

## II.    Deposition of Governor Ernie Fletcher

Moore has filed a motion asking the Court to reconsider its prior order quashing a subpoena to depose Kentucky Governor Ernie Fletcher, or in the alternative, to permit a deposition upon written questions [Record No. 54]. In his complaint, Moore alleges that "[i]f the I.V. insertion team is unable to insert the I.V.'s [sic] after 60 minutes, Defendant Rees and Defendant Simpson will ask Defendant Fletcher to call off the execution and reschedule it."  Complaint at ¶82.   In his motion, Moore explains that he seeks to question the Governor regarding his possible actions in the event that the execution team is unable to locate a suitable vein.  According to Moore, if the execution team is unable to insert an I.V. within 60 minutes, the protocol requires that the Governor be contacted with a request that the execution be postponed.  Moore seeks information on "what Defendant Fletcher will do under this situation, what procedures he will employ, by what means he (or his designee) will be available during the execution, how he will make that decision, who he will consult with, whether he will consult with counsel for the death-sentenced inmate, and what

information he will consider in making this decision." Motion at 4.

Moore's motion will be denied. The Governor's response to a request to postpone the execution has no bearing on the question of whether the execution protocol is unconstitutional. If the risk of unnecessary pain is an unacceptable risk inherent in the lethal injection protocol, that risk will exist regardless of whether the execution is postponed.

Moore contends that Governor Fletcher is a doctor, that "[p]resumably his medical knowledge will allow him to advise the I.V. team on how to insert an I.V. if they are unable to do it on their own within 60 minutes." Motion at pg.3, n.5. This argument is flawed.

First, Moore challenges the *implementation* of KDOC's execution protocol. He does not challenge any alleged *variation* from that protocol that may occur during his execution. In other words, KDOC's protocol contemplates that the execution team will contact Governor Fletcher in the event a suitable vein cannot be located within 60 minutes for the sole purpose of rescheduling the execution date; it does not contemplate that the Governor will actively offer medical advice to the execution team on how to accomplish venous access.

Second, Kentucky law directly prohibits a doctor from taking part in an execution: "No physician shall be involved in the conduct of an execution except to certify cause of death provided that the condemned is declared dead by another person." KRS 431.220(3). Further, any doctor licensed in Kentucky risks loss or suspension of his or her medical license if any of the acts identified in KRS 311.595 are committed, including "dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public or any member thereof." KRS 311.595(9).[3] That phrase is further defined to include, among other things, "... any departure from,

---

[3] The Court need not address whether a Governor's actions undertaken in his capacity as Governor, rather than in his capacity as a physician, are subject to this restriction.

-10-

or failure to conform to the principles of medical ethics of the American Medical Association or the code of ethics of the American Osteopathic Association." KRS 311.597(4). Article 2.06 of the American Medical Association's Code of Ethics provides that "A physician, as a member of a profession dedicated to preserving life when there is hope of doing so, should not be a participant in a legally authorized execution." While the advisory notes to AMA Ethics Rule 2.06 clearly address the entire range of proscribed conduct, selecting injection sites and advising lethal injection personnel are expressly identified as prohibited acts. Moore has offered no evidence into the record which even supports, the notion that the Governor would act in a manner contrary to Kentucky law in performing his limited role of postponing an execution.

Finally, the Governor's authority to schedule an execution date in the first instance is one expressly derived from the Kentucky Constitution, and thus "is strictly an execution function." *Bowling v. Commonwealth*, Ky., 926 S.W.2d 667, 669 (1996). The Governor's authority to *re*-schedule an execution, whether before or after he has been asked to do so by the execution team, likewise necessarily derives from this constitutional grant of authority, not from the execution protocol. His deliberative process in reaching that decision is therefore squarely encompassed within the executive privilege and is generally guarded from disclosure. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Of course, this privilege may be overcome upon a sufficient showing of need, determined by balancing a variety of factors, including the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility that compelled disclosure will chill frank communications between government employees in the future. *In re Franklin Nat'l Bank Securities Litig.*, 478 F.Supp. 577, 583 (E.D.N.Y. 1979). Consideration of these factors, particularly the lack of apparent relevance, the absence of an allegation of official

-11-

or government misconduct, and the self-evident chilling effect that compelling disclosure would have, necessitate the conclusion that Moore has failed to demonstrate need sufficient to justify overriding the execution privilege in this case.  Moore's motion for reconsideration will therefore be denied.

### III.   Compelling Disclosure of Kentucky's Electrocution Protocol

   A.   <u>Defendants' request for more time to respond</u>.

   Having failed to file a timely response to Moore's motion to compel their disclosure of KDOC's protocol for carrying out a death sentence by electrocution [Record No. 80], Defendants have moved for permission to file their brief out of time. [Record No. 85].  Defendants indicate that they were confused as to the due date for their response because of their counsel's significant caseload and because Moore filed three separate discovery motions at the same time.  In response, Moore alleges that this is not the first time the Defendants have failed to file a timely response, and assert that the rules of civil procedure must be enforced to be effective [Record No. 93].  Defendants reply that their tardiness was an honest mistake and not the product of contempt for the civil rules, and indicate they have exceeded the requirements of the civil rules in an effort to accommodate Moore's discovery requests [Record No. 96].

   Strict compliance with some of the civil rules may be excused in certain circumstances, and may be particularly appropriate where matters of public concern are at issue.  *Wilson v. Winstead*, 84 F.R.D. 218 (E.D.Tenn. 1979).  Of course, a pattern of repeated failures to satisfy the requirements of the civil rules may also impede the orderly process of litigation, and therefore sanctions may be required to ensure due respect is given to the parties, the court, and the public interest.  The Court finds that sanctions are not appropriate here.  However, situations like this can be avoided by filing

a motion to extend time under Rule 6(b), preferably before the deadline looms near. Defendants'
motion [Record No. 85] will be granted, and the Clerk of the Court will be directed to file the
tendered response into the record.

B.     Moore' request for KDOC's electrocution protocol.

Moore asks the Court to compel disclosure of KDOC's execution protocol for death by
electrocution [Record No. 80]. Moore asserts that the electrocution protocol is relevant to his facial
challenge to electrocution as a violation of the Eighth Amendment's prohibition against cruel and
unusual punishment. Complaint, ¶545 ("Execution by electrocution violates the Eighth Amendment
of the United States Constitution."); ¶482; Motion at pg. 3 ("... the risk of unnecessary pain and
suffering inherent in electrocution violates the evolving standards of decency test of the Eighth
Amendment.").

Having reviewed Moore's complaint and the applicable law, the Court concludes that the
protocol need not be disclosed to Moore because the claim to which it would be relevant, Moore's
facial challenge to electrocution as cruel and unusual punishment in violation of the Eighth
Amendment, must be dismissed under established Sixth Circuit precedent as the "functional
equivalent" of a second or successive habeas petition over which this Court lacks subject matter
jurisdiction.[4]

Prior to the Supreme Court's decision in *Nelson*, the Sixth Circuit and most circuit courts of
appeal treated all method-of-execution challenges filed under § 1983 as *de facto* second or
successive habeas petitions. *See, e.g., In re Williams*, 359 F.3d 811 (6th Cir. 2004); *In re Sapp*, 118

---

[4]   Moore is proceeding *in forma pauperis* in this action pursuant to 28 U.S.C. §1915, and seeks relief against
a governmental agency and/or its officers. Accordingly, federal law requires the Court to dismiss a claim at any time
if it determines that the claim is frivolous or fails to state a claim. 28 U.S.C. §1915(e)(2); 28 U.S.C. §1915A.

F.3d 460, 462 (6th Cir. 1997) ("this challenge to the manner of execution is a challenge seeking to interfere with the sentence itself, and thus, is properly construed as a petition for habeas corpus."). In *Nelson v. Campbell*, 541 U.S. 637, 644-51 (2004), however, the Supreme Court held that a death row inmate could utilize § 1983 to assert a constitutional challenge to the "cut-down" procedure to be used to access the condemned's compromised veins during his lethal injection. *Nelson*, 541 U.S. at 644 ("A suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself ... "). Two years later, in *Hill v. McDonough*, 126 S.Ct. 2096, 2102 (2006), the Supreme Court applied *Nelson*'s rule to permit a § 1983 challenge to the three-drug sequence used during Florida's lethal injection procedure.

In each decision, however, the Supreme Court was careful to distinguish between challenges to a particular method of carrying out a death sentence, *i.e.*, the manner in which veins are accessed to inject the lethal chemicals, and challenges to a category of methods for carrying out a death sentence, *i.e.*, lethal injection generally. While *Nelson* and *Hill* permit the former type of narrow "as-applied" challenges to be brought under § 1983, the Court expressly left open the question whether the latter category of broad "facial" challenges are cognizable under §1983 or only through habeas corpus. *Nelson*, 541 U.S. at 644 ("[W]here the legislature has established lethal injection as the preferred method of execution, a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself ... We need not reach here the difficult question of how to categorize method-of-execution claims generally.")

Because the Supreme Court's decisions in *Nelson* and *Hill* have not altered the law in this area, established Sixth Circuit precedent remains controlling. The Sixth Circuit long ago held that a general challenge to the method of execution cannot be brought under § 1983, and such a claim

-14-

must be dismissed for lack of subject matter jurisdiction.  *In re Williams*, 359 F.3d 811, 812-13 (6th Cir.) (*en banc*), *cert. denied*, 540 U.S. 1206 (2004); *In re Sapp*, 118 F.3d 460, 463-64 (6th Cir. 1997) ("We follow the clear holding of *Gomez*, as endorsed by the Eleventh Circuit, that a challenge to a method of execution, whatever denominated (Rule 60(b), *see McQueen*, 99 F.3d at 1335 (collecting cases), § 1983, or otherwise) is to be treated as a habeas petition.").  The Sixth Circuit has recently indicated that this rule remains the law even after *Hill*.  *Cooey v. Strickland*, 2007 WL 623482, *6 (6th Cir. 2007) (In *Hill*, "the Court concluded that the plaintiff's action was properly brought under §1983 *because it did not present a general challenge to his execution by lethal injection*, but rather limited the challenge to the specific protocol currently used by defendants.") (emphasis added).

Finally, even if Moore's claims would support a § 1983 action, Sixth Circuit precedent would require dismissal.  *Buell v. Mitchell*, 274 F.3d 337, 370 (6th Cir. 2001) ("Courts have consistently upheld the constitutionality of the death penalty in general, and by electrocution in particular ... Electrocution has yet to be found cruel and unusual punishment by any American court.  We decline to be the first."); *Greer v. Mitchell*, 264 F.3d 663, 691 (6th Cir. 2001); *In re Sapp*, 118 F.3d 460, 464 (6th Cir. 1997) (rejecting a challenge to the constitutionality of electrocution as failing to present a likelihood of success on the merits).  Nor is there any reason to be believe that in the six years since the Sixth Circuit's decisions in *Buell* and *Greer* the polity has undergone any sea change in its "evolving standards of decency" with respect to electrocution.  *In re Sapp*, 118 F.3d at 464 ("Electrocution has never been found to be cruel and unusual punishment by any American court. The very practice of electrocution has been upheld by other courts within the past year, and there is no argument even plausible that there are differences in the level of 'evolving decency' among the

different circuits or states of the union, or over the last very few years.").[5]  Accordingly, Moore's motion to compel disclosure of KDOC's electrocution protocol must be denied and his facial challenge to the constitutionality of electrocution must be dismissed for lack of subject matter jurisdiction.

## IV.   Depositions of Executioner Team Members

In anticipation of objections from the Defendants, Moore has requested leave to depose medical personnel at the Kentucky State Penitentiary ("KSP"). [Record No. 81, 110].  These individuals include:

1.     Terri Jones, a nurse who has attempted to draw blood from Moore in the past;

2.     Brian Bauer, a nurse who has attempted to draw blood from Moore in the past;

3.     Dr. Steve Hiland, a physician who has attempted to draw blood from Moore in the past or was present during such attempts;

4.     any other nurse at KSP who has attempted to draw blood from Moore in the past;

5.     Warden Thomas Simpson, who has authority to make decisions regarding the manner in which a death sentence is carried out;

6.     James M. Schomig, Deputy Commissioners of Adult Institutions, who is delegated responsibilities from KDOC's Commissioner;

7.     all members of the execution team, who are collectively responsible for

_____

[5]  In addition, Moore's facial challenge to electrocution is time-barred.  Because § 1983 does not provide its own statute of limitations, federal courts "borrow" the most analogous statute of limitations from the state where the events giving rise to the claim occurred.  *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985).  Kentucky law accordingly supplies the applicable statute.  *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).  In Kentucky, the applicable statute to be borrowed for civil rights claims is the one-year statute of limitations for residual tort claims found in KRS 413.140(1)(a).  *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *University of Kentucky Bd. of Trustees v. Hayse*, Ky., 782 S.W.2d 609, 613 (1989).  Under *Cooey v. Strickland*, 2007 WL 623482, *6 (6th Cir. March 2, 2007), a claim asserting a facial challenge to a method of execution accrues upon the conclusion of direct review of criminal conviction.  The Supreme Court denied Moore's petition for a writ of *certiorari* on direct review in 1990.  Because more than one year has passed since Moore's claim accrued, it is time-barred.

carrying out the death sentence; and

8.    Guard Blackburn, who witnessed an attempt to draw Moore's blood in November 2006.

In their Responses [Record Nos. 91, 122], Defendants assert that:

1.    Dr. Hiland has no direct participation in lethal injections, and Moore's counsel learned this fact in the *Baze* litigation;

2.    deposing KSP nurses would interfere with their performance of their duties;

3.    Warden Simpson has no knowledge regarding the development of the execution protocol, but does supervise the training of the execution team members and will preside over Moore's execution should it occur; and

4.    information regarding the execution team members was provided to Moore's counsel in the *Baze* litigation two years ago, and depositions of the team members would threaten their safety.[6]

In his Replies [Record Nos. 95, 123], Moore disputes the assertion that Dr. Hiland has not drawn blood or observed others doing so; asserts that mere inconvenience to staff is not a sufficient basis to preclude discovery entirely; and asserts that security concerns can be adequately addressed through protective measures undertaken in the discovery process.

With respect to Dr. Hiland, Moore disputes Defendants' assertion that he has no role in the lethal injection process.  Accordingly, Moore is entitled to discovery on this point.  While the warden may not have created the execution protocol, it appears that he will play a prominent role in its

---

[6] Defendants also contend that Moore's fundamental claim in this case is that "his vein disorder prevents him from being executed under any method that requires the use of an I.V. catheter to deliver lethal chemicals to his veins." Because KRS 431.220(1)(a) requires "[e]very death sentence [is to] be executed by continuous intravenous injection of a substance or combination of substances sufficient to cause death," Defendants argue that Moore's claims fall outside the scope of "as applied" claims permitted to be brought under *Hill*. Defendants' Response at pgs. 5-6. Moore counters that his claims are permissible under *Hill* because he admits that his Eighth Amendment rights would not be violated if his veins were accessed by using the percutaneous procedure described in his complaint. Defendants' objection based upon the nature of Moore's claims is addressed in Section VII below.

implementation, and his testimony thus has a readily-discernable bearing on Moore' claims.

Defendants have raised several points which merit further discussion. First, the Defendants have a strong interest in preserving the safety, and hence anonymity, of the execution team members and those involved with the process. KSP is a maximum security prison, and any discovery in this matter must not interfere with the safety and operation of that institution. The Defendants are therefore entitled to scrupulously protect those interests, both during discovery and at any trial, in a manner that they deem most appropriate, to the extent that manner does not unduly interfere with Moore's need to obtain discovery of relevant information. The parties are in the best position to reach an agreement on this issue. However, the Court will resolve the matter if a reasonable resolution cannot be reached by agreement.

Second, the Defendants have asserted that certain of the discovery sought by Moore is propounded for the purpose of delay or harassment in light of the discovery already provided in the *Baze* litigation. The record presently before the Court is not sufficient to determine whether the information is necessarily identical to that already provided or sought for the purpose of delay. Both parties are aware that the Federal Rules of Civil Procedure provide adequate mechanisms to check discovery abuses. A party who believes that a fact is not fairly open to dispute may seek an admission of that fact under Rule 36. A party who unreasonably refuses to admit that fact which is subsequently proven to be true does so at peril of paying the costs and attorneys' fees incurred to prove that fact under Rule 36(c)(2). Similarly, deposition questions posed in bad faith or to harass may be halted under Rule 31(d)(4) and costs and sanctions charged against the offending party under Rule 37(a)(4). The Court will not hesitate to sanction any litigant who unreasonably refuses to participate or cooperate in the discovery process.

V.      **Recording Attempts to Draw Moore's Blood**

Moore invokes the All Writs Act, 28 U.S.C. §1651, in support of his motion to compel the Defendants to document every attempt they make to draw blood from him [Record No. 82]. Moore alleges that Defendants used to document attempts to draw blood some years ago but have stopped doing so, and therefore there is no documentary record of more recent attempts to draw blood. Moore contends that such information would be "in aid of this court's jurisdiction." Moore further contends that no other, more specific statute applies to his request because the Federal Rules of Civil Procedure cannot be applied to require a party to create information for discovery that does not already exist.

Defendants respond that Moore could seek discovery of existing medical records under Federal Rule of Civil Procedure 34 and a medical examination of Moore under Rule 35 [Record No. 90]. Further, Moore may obtain information regarding these attempts to draw blood through depositions of the medical personnel who made the attempts. Moore replies that he has already obtained what medical records exist, but that no documents exist for the recent undocumented attempts at blood draws, and that a current medical examination will shed no light on what transpired at prior attempts to draw blood. He further contends that depositions are insufficient because human memory fades over time, thus degrading the quality of the evidence [Record No. 94].

The All Writs Act provides that a federal court "may issue all writs necessary or appropriate in aid of [its] jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. §1651. This grant of authority, otherwise broad in its terms, is in fact quite narrowly circumscribed to fill only those narrow interstitials where no other, more specific statute or provision applies. *Penn. Dep't of Corrections v. U.S. Marshalls' Service*, 474 U.S. 34, 41-43 (1985) ("Where a statute specifically

-19-

addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."); *United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) ("Our decisions make clear that where relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist, namely Fed.R.Civ.P. 65.").  In particular, the All Writs Act provides no basis to avoid the application of or contradict the requirements of the Federal Rules of Civil Procedure where they apply.  The question is not whether the more specific provision will grant the relief sought by the applicant, but rather merely whether it encompasses the subject matter of the motion. *Florida Medical Ass'n, Inc. v. U.S. Dept. of Health, Educ. and Welfare*, 601 F.2d 199, 202 (5th Cir. 1979) ("While the All Writs Act empowers a district court to fashion extraordinary remedies when the need arises, it does not authorize a district court to promulgate an Ad hoc procedural code whenever compliance with the Rules proves inconvenient."); *see also Scardelletti v. Debarr*, 265 F.3d 195, 212 (4th Cir. 2001).

Orders issued under the All Writs Act must aid the court in exercising its jurisdiction. *Jones v. Lilly*, 37 F.3d 964 (3rd Cir. 1994).  A writ is issued "in aid of the court's jurisdiction" when it is designed to give practical effect to a decree or injunction already entered by the court. *Hodges v. Bell*, 170 Fed.Appx. 389, 393 (6th Cir. 2006) (unpublished disposition) (All Writs Act does not provide authority to require prison officials to monitor prisoner's living conditions even where relevant to claim presented to court); *Wesch v. Folsom*, 6 F.3d 1465 (11th Cir. 1993).  It is not a grant of plenary power to the federal courts and does not authorize a court to order a party to aid another party in conducting a more effective investigation when other bases for relief are available. *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283 (9th Cir. 1979).  While a precise articulation of

when a writ is "in aid of the court's jurisdiction" may be elusive, *Jones*, 37 F.3d at 967, it seems clear that this requirement will be satisfied only where, in the absence of the writ, the court will be divested of jurisdiction or, at a minimum, the effectiveness of that jurisdiction rendered null by a court's inability to pragmatically enforce its judgments and decrees.

What Moore seeks through his motion is evidence relevant to his claims, a subject matter comprehensively treated under the Federal Rules of Civil Procedure. The fact that the Rules may not permit the relief he seeks does not authorize the *ad hoc* creation of a remedy out of whole cloth utilizing the All Writs Act as an expedient. If Moore seeks evidence to support his claims, he must produce it himself or obtain it through ordinary discovery channels. Nor would Moore's requested order be in aid of this Court's "jurisdiction." While Moore asserts that this information would be the "best evidence" of Defendants' difficulties in drawing blood from him, nearly all civil cases proceed through discovery and trial with less-than-perfect evidence regarding the claims presented. Fading memories, lost documents, deleted e-mails, and the like routinely reduce the quality and quantity of evidence available to establish the merits of a claim, but parties and counsel alike routinely present their cases for decision without requiring the creation of new evidence that was not already in existence. Here, Moore acknowledges that KSP nurses will be able to testify regarding their prior attempts to draw blood from him, but asserts only that documentary proof would be better. This may be so, but the Federal Rules do not require the creation of the best evidence, nor does the absence of the "best evidence" inhibit this Court's jurisdiction to decide this case on the merits. Moore's motion will be denied.

VI.     **Compelling Responses to Moore's Discovery Requests**

A.      <u>Defendants' request for more time to respond</u>.

For the same reasons previously stated, Defendants have moved for permission to file their brief out of time. [Record No. 92]  Moore has filed no opposition to the motion.  Defendants' motion will be granted in light of the strong public interest in having the issues presented in this case decided on the merits, *Wilson v. Winstead*, 84 F.R.D. 218 (E.D.Tenn. 1979), and the Clerk of the Court will be directed to file the tendered response [Record No. 97] into the record.

B.      <u>Moore's motion to compel discovery</u>.

In his motion [Record No. 83], Moore states that the Defendants have refused to provide any response to his interrogatories, requests for production of documents, and requests for admission. In their Response [Record No. 97], Defendants note that Moore's discovery requests total 101 requests for production of documents, 25 interrogatories, and 298 requests for admission. Defendants have refused discovery generally on the ground that Moore's electrocution and lethal injection claims are not the type of claim permitted by *Hill* because Moore's allegations, taken collectively and as true, allege that there is no manner in which the Defendants could constitutionally electrocute him or inject the lethal chemicals through an I.V. line as required by Kentucky statute, KRS 431.220(1)(a).  The Defendants have also responded to certain individual discovery requests by stating that the information requested can be found in their Answer to the complaint or was previously disclosed to Moore's counsel in the *Baze* litigation, or that the information is or should be protected from disclosure in light of security concerns or under the attorney-client privilege. Moore contends that his claims fall within the confines of those permitted by *Hill*, that the Defendants' Answer and prior information disclosed in the *Baze* case is either insufficient or

-22-

nonresponsive to the discovery request, and that security issues can be adequately addressed without completely depriving him of the requested information.

With respect to requests for discovery of information relevant to his electrocution claim, Moore's motion to compel will be denied because this claim will be dismissed for lack of subject matter jurisdiction as described in Section III above.

With respect to Moore's lethal injection claims, the Court will address each of the Defendants' objections and responses to Moore's discovery requests. Because the parties' submissions make clear that well over one hundred discovery requests are in dispute, the Court will address the parties' arguments categorically rather than individually. Before doing so, however, the Court notes that some of the cases cited in the briefs, in particular *Johnstone v. Cronlund*, 25 F.R.D. 42 (E.D.Pa. 1960), and *Diederich v. Department of the Army*, 132 F.R.D. 614 (S.D.N.Y. 1990), provide the parties with clear and cogent direction on how discovery is to be conducted in federal court, and highlight some of the shortcomings of certain positions asserted by the parties in their filings. The cases therefore should afford the parties useful counsel on the best manner to complete discovery without further intervention of the Court.

There are only five types of response that can be made to a request for admission: (1) an unqualified admission; (2) an unqualified denial; (3) a statement that the respondent has conducted a reasonable investigation into the substance of the request but that the information known or readily available to him or her is nonetheless insufficient to enable him or her to admit or deny the request; (4) a qualified admission which explains the need for and substance of the qualification or explanation; and (5) an objection to the request. It is further worth noting that, under Federal Rules of Civil Procedure 36 and 37, only the propriety of the fourth and fifth type of response may be

challenged prior to trial under Rule 36(a); the appropriateness of the second and third type of response may only be assessed through a post-trial motion for expenses under Rule 37(c)(2).[7]

First, the Defendants responded to a substantial portion of Moore's requests for admission by noting an objection to the request, stating that Defendants had already responded to the requested information in an identified paragraph in their Answer, or that the information had already been provided to Moore, presumably through his counsel, in the *Baze* litigation.

Neither of these objections can be sustained, except in one limited respect. Both objections assert, in essence, that the Defendants need not respond because the information has already been provided to Moore and is therefore within his own control. This is not a valid objection. 7-36 MOORE'S FEDERAL PRACTICE *Civil* §36.11[c] (courts reject objections on the ground that the requested matter consists of facts within the knowledge of the requesting party); *Diederich v. Department of the Army*, 132 F.R.D. 614, 617 (S.D.N.Y. 1990) ("[T]he purpose of requests for admissions are to seek defendant's agreements as to alleged fact. Whether plaintiff could obtain the information independently or whether certain facts are within plaintiff's knowledge are irrelevant considerations."). If the response to the request may be determined by reference to another source within the respondent's control, it is respondent's obligation to take the steps necessary to review that information and determine its response.

---

[7] "The propounding party may file a motion during the pretrial period requesting that the court determine the sufficiency of the answers or objections. If the court is persuaded that an objection was not proper, it must order the opposing party to respond on the merits. If the court is persuaded that an answer does not comply with the requirements of Rule 36, it may order either that the matter is admitted, or that an amended answer be served. ... However, if the response consisted of a straightforward but clearly unjustified denial, or a statement, proper in form but ultimately wanting in substance, that the responding party cannot either admit or deny the request at that stage of the proceedings, Rule 36 leaves a propounding party effectively without a remedy. In these situations, "Rule 36 does not provide for a pretrial hearing on whether the response is warranted by the evidence thus far accumulated. Instead, Rule 37(c) is intended to provide post-trial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial." 7-37 MOORE'S FEDERAL PRACTICE *Civil* §37.70 (2006); *United States v. Watchmakers of Switzerland Info. Center, Inc.*, 25 F.R.D. 197, 199 (S.D.N.Y. 1959).

Defendants cite *Sendi v. Prudential-Bache Securities*, 100 F.R.D. 21 (D.D.C. 1983), for the proposition that discovery requests which seek information that has already been completely addressed in a prior deposition are objectionable as duplicative or oppressive. *Id.* at 23. However, *Sendi* and the cases cited therein involved discovery requests seeking information already provided through depositions already conducted *in that case*. Defendants seek to substantially extend this rule to information provided through depositions and discovery conducted in entirely separate litigation in *Baze*. No such extension is warranted or sustainable. While doubtless the process of conducting discovery in the *Baze* case will assist the parties with any discovery conducted here, the cases, claims, and evidence to support them are distinct.

The Defendants are correct, however, in asserting that general references to deposition testimony or documents in the Baze case are too broad and nonspecific to reasonably permit a response, and are objectionable on that basis. *United States v. Watchmakers of Switzerland Info. Center, Inc.*, 25 F.R.D. 197, 200 (S.D.N.Y. 1959) (admission requests which incorporate other documents by reference are generally improper because "the facts admitted in an answer to a request for admissions should be ascertainable merely by examination of the request and of the answer.").

The Defendants also objected to certain of Moore's discovery requests on the ground that the requested information is protected by the attorney-client privilege or must not be disclosed to protect the anonymity and safety of the execution team members. Both contentions are nonspecific and unsupported by sufficient information to uphold them. Any objection to disclosure based on the attorney-client privilege must be specific, particularized, and supported by sufficient information to permit the Court to assess the applicability of the privilege. 7-36 MOORE'S FEDERAL PRACTICE *Civil* §36.11[c]. The Defendants' assertion of privilege utterly fails to provide the Court with any of the

information needed to assess its viability and must therefore be rejected. *Diederich v. Department of the Army*, 132 F.R.D. 614, 617 (S.D.N.Y. 1990) ("We note that no basis has been articulated by defendant in terms of specific confidential communications or attorney work product ... any objection based on work product or attorney/client or other legitimate privilege must be sufficiently particularized and properly articulated to this court, with the risk of sanctions if they are found to be of an insubstantial or frivolous nature, and we give fair warning that we shall exercise our authority in this connection in the future, given similar ethereal responses.").

Defendants' contention regarding the need to protect the execution team members has self-evident merit. However, their assertion that there are no measures which can be undertaken to protect the anonymity of those members is both unsupported and meritless. *See also* Section III(B) above. Litigation raising identical or similar claims regarding the lethal injection protocol is pending in a number of federal courts throughout the country and, to the Court's knowledge, no state has asserted nor has any court accepted the suggestion that the unquestionably valid concern for the safety of execution team members is simultaneously so paramount and so fragile that no discovery of any kind may be had from these individuals who possess knowledge directly relevant to the claims asserted herein. Counsel for the parties can confer to reach agreement on one or more of a wide range of devices that may be employed to provide the information requested to Moore without compromising the anonymity of execution team members. *See, e.g., Taylor v. Crawford*, 05-4173 (W.D. Mo. June 26, 2006) (court permitting anonymous interrogatories and anonymous depositions of unknown executioners).

Finally, Defendants assert that many of Moore's requests for admission are objectionable because their wording is not conducive to simple admission or denial. Rule 36 requires that

"Requests for admission should be simple and direct.  Parties are not required to admit or deny requests that consist of statements that are vague or ambiguous."  7-36 MOORE'S FEDERAL PRACTICE *Civil* §36.10[6] (citing *Henry v. Champlain Enters.*, 212 F.R.D. 73, 77 (N.D. N.Y. 2003) (requests must be simple and direct, not vague or ambiguous, so they can be answered with simple admit or deny, without explanation); *Dubin v. E.F. Hutton*, 125 F.R.D. 372, 376 (S.D. N.Y. 1989) (certain requests contained vague and ambiguous wording that did not allow defendant to fairly admit or deny them); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 107-108 (D. Del. 2002) (requests for admission should be phrased so that they may be admitted or denied with little or no explanation or qualification)

The Court agrees that many of Moore's requests are objectionable on this ground.  Certain of Moore's requests merely ask the Defendants to confirm certain historical facts (*e.g.*, "Kentucky Department of Corrections nurses and/or doctors have not been able to insert a needle into Brian Keith Moore's veins to draw blood in a first attempt on more than one occasion.").  Many others, however, are articulated using words steeped in connotation and meaning far beyond the bare factual information in which they are couched ("Kentucky decided to use sodium thiopental, pancurium bromide, and potassium chloride because that is what other states used.").  Still others use words that may necessarily be employed to convey a range of meaning ("Kentucky Department of Corrections nurses and/or doctors have had *difficulty* inserting a needle into Brian Keith Moore's veins.").

While Rule 36 expressly contemplates that a responding party may qualify its answer to address any ambiguity introduced by the proponent's statement to be admitted or denied, this should be the exception and not the rule, and responses need not be required where the requests are replete with such deficiencies.  *Diederich v. Department of the Army*, 132 F.R.D. 614, 619 (S.D. N.Y.

1990).  Where the requests generally suffer from vagueness or repeatedly require the respondent to

qualify its answer, compelling responses would frustrate rather than further the goals of Rule 36:

> The authorities are in agreement that Rule 36 was originally intended to relieve parties of the necessity of proving facts not really in dispute, [which] are rarely crucial to liability, although they may when taken in conjunction with other facts, be essential to proving the issue.
> ...
> [defendants contend] each statement sought to be admitted may contain an isolated bit of truth; but standing alone out of the context of the whole truth such statements convey unwarranted and unfair inferences.  This objection goes to the heart of the difficulties which arise when a party attempts to use Rule 36 to cover every facet of a case. ... the purpose of the Rule is to separate the wheat from the chaff and to get down to the real issues in the case.  In other words, are admissions to supplement other discovery privileges such as depositions and interrogatories or were they intended to supplant them and, more important, to give to the party making use of the Rule rights which he would not have had on the trial of the cause?  If we conclude that Rule 36 is so broad that almost any question with any relevancy directly or indirectly to the issue can be asked and an answer required, the result could be as here, namely, a number of statements each of which may tell a small part of a long story; which may be out of context; which may necessitate detailed explanation in order to put them in proper perspective.  Of course, the party admitting the truth of a statement of fact may qualify his answer under the specific terms of Rule 36, but it is not always possible by qualifying an admission to avoid the inferences arising from the phrasing of the statement sought to be admitted.

*Johnstone v. Cronlund*, 25 F.R.D. 42, 44-45 (E.D.Pa. 1960); *see also Honeycutt v. First Federal*

*Bank*, 2003 WL 1054235, *1 (W.D.Tenn. 2003) (unpublished disposition) (statements that are

vague, susceptible of more than one interpretation, combine fact, conclusion, and argument, require

lengthy explanations before they can fairly be answered, or require inference defeat the goals of Rule

36 and are properly objectionable) (collecting cases).

Where approximately one hundred requests for admission are at issue, the Court will not

investigate each individually to determine whether it suffers from these sorts of defects.  *Johnstone*,

25 F.R.D. at 46 ("the Court should not have to sort out the questions and break them down into

categories and compel the adversary to answer one part and not answer the other.  The questions

should be so submitted that they are direct, material, relevant and concise, and, in general, capable

of answer by a yes or no. ... To hold otherwise we are convinced would lead to long and interminable

hearings on requests for admissions which would serve no real purpose.").  Instead, the plaintiff

should be afforded the opportunity to correct the defects and, should disagreements remain, the court

may analyze particular requests on an individual, rather than systemic, basis.

Defendants' final contention, that Moore should be denied all discovery because his claims

are not cognizable in a civil rights action under § 1983, is discussed below.

**VII.   The Nature of Moore's Claims**

As noted in Section III(B) above, a broad "facial" challenge to the constitutionality of

execution by lethal injection on Eighth Amendment grounds should be dismissed for lack of subject

matter jurisdiction as the "functional equivalent" of a second or successive habeas petition, even

though styled as a civil rights action filed under § 1983.  28 U.S.C. §2244(b)(3), (4); *In re Williams*,

359 F.3d 811, 812-13 (6th Cir.) (*en banc*), *cert. denied*, 540 U.S. 1206 (2004); *In re Sapp*, 118 F.3d

460, 463-64 (6th Cir. 1997) ("We follow the clear holding of *Gomez* ... that a challenge to a method

of execution, whatever denominated ... is to be treated as a habeas petition.").

Defendants have resisted all discovery in this action on the theory that Moore's complaint

constitutes just such an attack.  Defendants assert that Moore's complaint alleges, in its totality, that

KDOC's protocol and his own medical condition collectively operate to preclude his execution by

any method involving the use of an I.V. catheter, something expressly required by KRS

431.220(1)(a).  Defendants' Response at pgs. 5-6.

Moore insists, however, that his claims in this proceeding challenge his execution by lethal

injection only "as applied," meaning he does not question here the constitutionality of KRS

-29-

431.220(a)(1), which requires his death sentence to be carried out by lethal injection absent his affirmative election to select electrocution.  Instead, he contends, he challenges only the means by which KDOC intends to implement that lethal injection procedure through its administratively-developed protocol.  By conceding that the percutaneous method to obtain venous access described in his complaint is constitutionally sound, Moore attempts to align his claims with those permitted to be brought in a § 1983 action by the Supreme Court in *Nelson v. Campbell*, 541 U.S. 637 (2004) (permitting 1983 challenge to "cut-down" procedure used to access compromised veins), and *Hill v. McDonough*, 126 S.Ct. 2096 (2006) (permitting 1983 challenge to three-drug sequence used in lethal injection protocol).

But characterizing a claim as a "method of execution" claim does not, *ipso facto*, mandate the conclusion that it is cognizable in a § 1983.  The Supreme Court has made clear that a court must examine the exact particulars of a plaintiff's claim to determine whether that claim would effectively bar implementation of the sentence as defined by the relevant state statutes.  For example, a plaintiff might contend that his compromised veins could only be adequately accessed through use of a certain procedure, and that the procedure was sufficiently complicated that its performance by anyone other than a physician would entail sufficient risks of unnecessary suffering to violate the Eighth Amendment.  Such a claim would fall outside the scope of claims permitted by *Nelson* in any state, including Kentucky, that prohibits physician involvement in lethal injection, because such a claim would not permit the sentence to be carried out without amending the relevant state statutes.

The first task is to determine the types of challenges which are permissible under § 1983.  Acknowledging that such lethal injection challenges fall near the hazy line between the core of federal habeas jurisdiction and traditional conditions of confinement claims brought under § 1983,

-30-

*Nelson*, 541 U.S. at 643, the Supreme Court began by noting that "[a] suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself--by simply altering its method of execution, the State can go forward with its sentence." *Id*. at 644.  However,

> Where the legislature has established lethal injection as the preferred method of execution, a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself.  A finding of unconstitutionality would require statutory amendment or variance, imposing significant costs on the State and the administration of its penal system.

*Id*.  Of course, the foregoing discussion related to the viability of § 1983 jurisdiction over a broad "facial" challenge to a method of execution such as lethal injection, an issue the Court expressly declined to decide.  *Nelson*, 541 U.S. at 644.  However, the Court's focus upon whether the challenge would, if successful, require a legislative change, rather than a merely administrative change, carried over into its discussion of "as-applied" challenges to the manner in which lethal injection is carried out:

> If as a legal matter the cut-down were a statutorily mandated part of the lethal injection protocol, or if as a factual matter petitioner were unable or unwilling to concede  acceptable alternatives for gaining venous access, respondents might have a stronger argument that success on the merits, coupled with injunctive relief, would call into question the death sentence itself. ... No Alabama statute requires use of the cut-down ..., and respondents have offered no duly-promulgated regulations to the contrary.

*Id*. at 645-46.  Thus, in distinguishing between "as applied" and "facial" challenges, the Court must determine whether as a practical matter, a successful claim would  require the legislature to repeal or amend its statutes setting forth the sentence and/or the means of carrying it out.[8]  Such a result

---

[8] In both *Nelson* and *Hill*, the Supreme Court expressly noted that the states had not promulgated a particular execution protocol through administrative regulation.  *Nelson*, 541 U.S. at 645; *Hill*, 126 S.Ct. at 2099.  The Court need not decide at this juncture whether a claim which, if successful, required a regulatory rather than legislative change, would nonetheless also be treated as falling within the exclusive realm of habeas jurisdiction.

would, in the Supreme Court's eyes, amount to a challenge to the fact of the sentence itself. *See Hill*

*v. McDonough*, 126 S.Ct. 2096, 2101 (2006) ("The invasive procedure in *Nelson* was not mandated

by law, and the inmate appeared willing to concede the existence of an acceptable alternative

procedure.  Absent a finding that the challenged procedure was necessary to the lethal injection, the

Court concluded, injunctive relief would not prevent the State from implementing the sentence.

Consequently, the suit as presented would not be deemed a challenge to the fact of the sentence

itself.").

      The next task is to identify and characterize Moore's claims.  Throughout his pleadings and

motions, Moore has described his claims as "challeng[ing] the chemicals and procedures used in

lethal injection."  Motion at pg. 3.  But Moore's claims are both broader and more detailed than this

characterization suggests.  As noted in Section I above, Moore's lethal injection claims include, at

least, challenges to the adequacy of the execution team members' training; the absence of life-saving

equipment; the choice of chemicals used; the amount of chemicals used; the manner in which the

chemicals are injected; the failure to monitor for consciousness before the third drug is injected; the

fact that his compromised veins will present increased difficulties in obtaining venous access for the

I.V. line; and the fact that the injection will cause his compromised veins to rupture, sending the

lethal injection chemicals into soft tissue.

      Moore's claims thus fall into two categories:  those which relate exclusively to the lethal

injection protocol as adopted and administered by KDOC, and those which relate to the

complications caused by his own physical condition.  Of the first group, Moore appears throughout

his pleadings and motions to concede, expressly or implicitly, that there are changes which can be

made by KDOC to render those procedures constitutionally sound, whether they be more training,

the acquisition of better or additional equipment, or changes to the composition, amount, or method of injection of the lethal injection chemicals.

Of the second group, Moore has acknowledged that using the percutaneous method of accessing his compromised peripheral veins would satisfy his constitutional concerns.  Moore's second allegation regarding his medical condition presents more difficulty.  In his complaint, Moore alleges that :

> 392.  A person with bad veins likely will not be able to handle the flow of the lethal injection chemicals, causing the veins and other blood vessels to blow. ...

> 394.  Because of Plaintiff's bad veins, even if Defendants are able to insert an I.V. into Plaintiff, the chemicals likely will not remain in his veins.

> 395.  If the chemicals do not remain in Plaintiff's veins, Plaintiff will suffer an excrutiatingly painful death.

Complaint ¶¶392, 394-55.  These allegations, taken collectively, appear to allege that there is no manner in which the Defendants can carry out Moore's execution by lethal injection without presenting an unacceptably high risk of his suffering excruciating pain in violation of his constitutional rights.  Indeed, by its nature, this claim would appear to trump all of Moore's other claims in this regard:  the Defendants could rectify all of the other defects alleged by Moore and would nonetheless still face his claim that his execution by lethal injection would necessarily cause an "excrutiatingly painful death" in violation of the Eighth Amendment.  Moore has not suggested any remedial action that Defendants could undertake to alter this outcome.  On the limited information before it, the Court would conclude that Moore's claims collectively foreclose his execution by lethal injection by any means, a result which would require dismissal of his complaint under 28 U.S.C. §2244(b).  *See Hill v. McDonough*, 126 S.Ct. 2096, 2101 (2006) ("If the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might

-33-

be proper.").

However, because the parties have only addressed this issue obliquely as part of their briefing on the discovery issues raised herein, the Court will enter a briefing schedule directing the parties to submit memoranda on the subject. As part of that briefing, the parties should further address the point at which Moore's lethal injection claims accrued for statute of limitations purposes, and hence whether they are timely asserted utilizing the analysis recently articulated by the Sixth Circuit in *Cooey v. Strickland*, 2007 WL 623482 (6th Cir. March 2, 2007). Because the issues to be addressed in these briefs are potentially dispositive of the claims asserted herein, all forms of discovery will be stayed pending their resolution.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.    Moore's motion for a preliminary injunction barring the Defendants from carrying out his execution [Record No. 5] is **DENIED**.

2.    Moore's motion for the Court to reconsider its prior order quashing the deposition subpoena for Kentucky Governor Ernie Fletcher [Record No.  54] is **DENIED**.

3.    Defendants' motion for an extension of time to file their response to Moore's motion to compel them to disclose the electrocution protocol [Record No. 85] is **GRANTED**. The Clerk of the Court is directed to file the tendered response into the record.

4.    Moore's motion to compel the Defendants to disclose Kentucky's electrocution protocol [Record No. 80] is **DENIED**.

5.    Moore's motions for permission to depose Defendant execution team members [Record Nos. 81, 110] are **GRANTED**.

6.    Defendants' motion for an extension of time to file their response to Moore's motion to compel discovery [Record No. 92] is **GRANTED**. The Clerk of the Court is directed to file the tendered response into the record.

7.    Moore's motion to compel the Defendants to gather data during their attempts to

draw blood from Moore [Record No. 82] is **DENIED**.

8.    Moore's motion to compel the Defendants to provide answers to his discovery requests [Record No. 83] is **GRANTED in PART and DENIED in PART**.

9.    The parties shall file briefs addressing solely those issues identified in Section VII of this Memorandum as follows:  Plaintiff Moore's brief is due on or before April 18, 2007; Defendants' brief is due on or before May 16, 2007; Plaintiff Moore's reply is due on or before May 30, 2007.  No other or further briefing shall be permitted unless directed by Order of the Court.  The matter will stand submitted for decision upon filing of Moore's reply.

10.   All forms of discovery in this action shall be stayed pending further order of the Court.

Dated this 30th day of March, 2007.

**Signed By:**

_**Karen K. Caldwell**_

**United States District Judge**

-35-