UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

**\*\* CAPITAL CASE \*\***

CIVIL ACTION NO. 06-CV-22-KKC

BRIAN KEITH MOORE                                                                                          PLAINTIFF

VS:                             **MEMORANDUM OPINION AND ORDER**

JOHN D. REES, ET AL.                                                                                    DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

Ralph Baze, a Kentucky death row inmate, has filed a motion to intervene in this action pursuant to Federal Rule of Civil Procedure 24(b), and the matter has been fully briefed by the parties. [Dkt. 101, 103, 107, 111, 112, 114, 116, 117]  At the request of the Court, the parties have also submitted briefs regarding the potential application of the *Rooker-Feldman* doctrine in light of the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). [Dkt. 119, 126, 127]. This matter is now ripe for decision.

### BACKGROUND

On April 19, 2006, Kentucky death row inmate Brian Keith Moore filed the present civil rights action pursuant to 42 U.S.C. § 1983.  Moore's extensive Complaint alleges, in sum, that Kentucky's method of carrying out his death sentence by lethal injection would violate his right to be free from "Cruel and Unusual Punishments" under the Eighth Amendment.  Moore seeks declaratory and injunctive relief.  [Dkt. 1]

On June 16, 2006, Kentucky death row inmate Jeffrey Leonard filed a motion to intervene in this action, tendering a Complaint asserting claims substantially identical to those asserted by Moore.  [Dkt.

1

36] The Defendants "voice[d] no objection to Leonard's intervention and, indeed, applaud Moore's apparent concession that his own unique physical characteristics do not prevent the factual and legal issues he asserts in his complaint from being 'common' with those asserted by Leonard." The Court granted Leonard's motion by Order dated August 25, 2006, on the ground that Leonard's Complaint presents factual or legal questions in common with those asserted by Moore. Fed. R. Civ. P. 24(b). [Dkt. 86]

On November 27, 2006, Kentucky death row inmates Ralph Baze and Thomas Clyde Bowling also filed motions to intervene in this action, again tendering Complaints asserting substantially identical claims that Kentucky's lethal injection protocol violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. [Dkt. 100, 101]

Unlike Leonard, however, Baze and Bowling had previously asserted these identical claims to the Kentucky state courts. On August 9, 2004, Baze and Bowling filed a civil complaint in the Circuit Court of Franklin County, Kentucky, asserting that Kentucky's lethal injection protocol violated the Eighth Amendment's prohibition against "Cruel and Unusual Punishments" as well as Section 17 of the Kentucky Constitution. They sought declaratory and injunctive relief. *Ralph Baze and Thomas C. Bowling v. Jonathan D. Rees, et al*, Civil Action No. 04-CI-1094, Franklin Circuit Court. [Dkt. 111 Exh. 1]

During pretrial proceedings in the state court, Baze and Bowling were permitted significant discovery. They deposed 17 individuals, including a number of high-ranking officers of the Kentucky Department of Corrections ("KDOC"). On January 1, 2005, Baze and Bowling filed a motion to compel the Defendants to permit the depositions of the members of the execution team. When the Franklin Circuit Court denied the motion on February 7, 2005, Baze and Bowling immediately sought a writ of mandamus or prohibition directly from the Kentucky Supreme Court. The parties have not revealed to

2

the Court (1) the information Baze and Bowling sought to obtain from the depositions or their legal bases for permitting the depositions to go forward; (2) the basis for the Defendants' opposition to the depositions; (3) the Franklin Circuit Court's reasoning in denying the requested discovery; or (4) the grounds asserted by Baze and Bowling before the Kentucky Supreme Court in support of their application for a writ of mandamus and/or prohibition.

While that application remained pending, the Franklin Circuit Court commenced a seven-day bench trial on April 18, 2005. During those proceedings, the court heard the testimony of twenty witnesses. After the parties submitted post-trial briefs, on July 8, 2005, the Circuit Court entered its Findings of Fact and Conclusion of Law in which it upheld the lethal injection protocol against constitutional scrutiny in all pertinent regards. After the circuit court had entered its judgment on the merits, on August 25, 2005, the Kentucky Supreme Court denied Baze and Bowlings' request for a writ of mandamus or prohibition regarding depositions of the execution team members on the ground that they possessed an adequate remedy on direct appeal. [Dkt. 111 Exh. 2]

Baze and Bowling then appealed the trial court's judgment to the Kentucky Supreme Court. The Defendants allege that Baze and Bowling did not raise the circuit court's refusal to permit the depositions of execution team members as a ground for reversal on appeal; Baze and Bowling directly contradict this assertion and indicate that this discovery issue was squarely presented in their appellate brief. Again, neither party has supported their respective allegations regarding the issues raised on appeal by filing a copy of the appellate briefing before the Kentucky Supreme Court into the record. On November 22, 2006, the Kentucky Supreme Court entered its Opinion and Order affirming the Franklin Circuit Court's decision in all respects. *Baze v. Rees*, Ky., 2006 WL 3386544 (2006). [Dkt. 111 Exh. 3]

Baze and Bowling filed their motions to intervene in this action five days later. In his motion

3

to intervene, Baze asserts that he satisfies the requirements of Rule 24(b) and that "neither exhaustion of administrative remedies nor res judicata poses [sic] an obstacle to this Court's authority to allow Baze to intervene." [Dkt. 101; *see also* Dkt. 112 at pg. 1: "To allow Baze to intervene, this Court needs to find only that the requirements set out in Rule 24 of the Federal Rules of Civil Procedure are satisfied and that res judicata does not prevent this Court from addressing the merits of Baze's claim."] The Defendants counter that Baze unnecessarily delayed in seeking to intervene and that his claim is barred by res judicata.

After Moore filed this action, perhaps because he anticipated the Defendants would object to the deposition of execution team members as they had in Baze's state court litigation, he filed a motion seeking leave to depose those individuals. [Dkt. 81, 110] After full briefing by the parties, the Court entered a Memorandum Opinion and Order indicating that the information sought by Moore appeared to satisfy the requirements for discoverability, and hence such discovery should be allowed so long as the parties could arrive at sufficient security precautions to provide for the security and anonymity of those individuals. [Dkt. 139] In that Memorandum Opinion and Order, the Court stayed discovery, however, in order to permit further briefing on the nature of the claims asserted by Moore and issues related to the statute of limitations in light of the Sixth Circuit's recent decision in *Cooey v. Strickland*, 05-4057, Court of Appeals for the Sixth Circuit. That briefing was completed on May 30, 2007. [Dkt. 157]

On August 14, 2007, the Attorney General of Kentucky filed a formal request with Kentucky Governor Ernie Fletcher to schedule Ralph Baze's execution. Governor Fletcher subsequently set Baze's execution date for September 25, 2007. The Court thereafter granted Baze's original and amended motions to expedite ruling on his motion to intervene in light of the approaching execution date. [Dkt. 159, 161, 174] Baze has filed a number of motions seeking discovery related to the merits

4

of his underlying claim regarding the constitutionality of Kentucky's lethal injection protocol, as well as motions to stay his execution pending resolution of both procedural and substantive matters in the present case. [Dkt. 162, 163, 164, 165, 167, 172, 177, 178] Recognizing that Baze's right to intervene in this proceeding is a necessary prerequisite to the various forms of relief sought in his subsequent motions, the Court will address that question first.

## DISCUSSION

I.      **Rooker-Feldman Doctrine.**

Federal courts may exercise subject matter jurisdiction over only such cases as are authorized by Congress. *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003). Because any judgment rendered in a case over which a district court lacks subject matter jurisdiction is void, a district court must satisfy itself that it possesses subject matter jurisdiction over a plaintiff's cause of action. *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998) ("[q]uite aside from whether the parties raise jurisdictional issues themselves -- or even attempt to consent or agree to federal jurisdiction -- federal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction.").

Baze's proposed intervenor complaint alleges that the Defendants' implementation of Kentucky's lethal injection protocol will violate his right to be free from "Cruel and Unusual Punishments" under the Eighth Amendment to the Constitution of the United States. Such a claim readily falls under the Court's "federal question" jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

However, another federal statute, 28 U.S.C. § 1257, grants appellate jurisdiction over any final decision rendered by the highest appellate court of any of the several States exclusively to the Supreme

Court of the United States. In the *Rooker* and *Feldman* decisions, the Supreme Court held that in order to give effect to this provision, federal district courts must be held to lack subject matter jurisdiction over an action that effectively serves as an appeal from a state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court recently clarified that the doctrine applies only where the prior state court judgment is the source of the injury complained of in the subsequent federal action. Where the subsequent action merely calls into question the propriety of the prior state court judgment, the effect of the prior state court adjudication is governed by ordinary application of principles regarding claim and issue preclusion. *Exxon Mobil*, 544 U.S. at 291-94; *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006). Thus, the *Rooker-Feldman* doctrine will not prevent a plaintiff from suing a participant in a prior state court proceeding for allegedly filing a false affidavit resulting in an adverse determination against the plaintiff. *Brown v. First Nat. Mtg. Corp.*, 2006 WL 3289232, *3 (6th Cir. 2006) (unpublished disposition) (*Rooker-Feldman* does not bar "an independent claim, 'albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'"). It does apply where the federal plaintiff identifies the prior state court decision as the source of the injury. The Sixth Circuit has explained:

> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 392-94 (6th Cir. 2006).

A number of courts, including this one, have recited the Second Circuit's recent articulation of the distinction as one of the most instructive:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive

6

> due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do [under *Rooker-Feldman*], regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.
>
> .... Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Hoblock v. Albany Co. Bd. of Elections*, 422 F.3d 77, 87-88 (2nd Cir. 2005). Thus, if a plaintiff in a subsequent federal action asserts that the prior state court judgment violated his substantive or procedural due process rights, the prior state court action is identified as the source of the injury, and the *Rooker-Feldman* doctrine negatives the assertion of subject matter jurisdiction by the federal district court. *McCormick*, 451 F.3d at 394. In contrast, where a plaintiff simply re-asserts the same claims in federal court that he or she has previously asserted without success in the state courts, such claims must clear the hurdles presented by preclusion law, not the *Rooker-Feldman* doctrine.

However, "there are certain exceptions to this rule of thumb. For example, if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself." *McCormick*, 451 F.3d at 394. Thus, the *Rooker-Feldman* doctrine will apply even where the plaintiff does not expressly identify the prior state court judgment as the source of the injury where the conduct complained of in the subsequent federal case is either enabled by, or is the inevitable consequence of, the prior state court judgment.

In his brief, Baze asserts that his proposed intervenor complaint does not identify the prior judgment of the Kentucky state court as the source of his injury, and therefore the *Rooker-Feldman* doctrine does not prevent the Court from asserting subject matter jurisdiction over the claims asserted

7

in his complaint. Of the 494 numbered paragraphs in Baze's proposed intervenor complaint, only one mentions the Franklin Circuit Court's judgment, and indicates only that this judgment is not entitled to preclusive effect because it was rendered without affording him a full and fair opportunity to litigate his claims. [Dkt. 101 Exh. 2 ¶19] The remainder of the complaint sets forth the factual basis for his Eighth Amendment claims by describing the conduct of the Defendants.

The Defendants counter that although Baze did not expressly identify the prior state court judgment as the source of his injury through the use of "magic words," *Rooker-Feldman* should nonetheless apply because the conduct about which Baze complains is the "product" of the prior state court litigation, and thus falls within the exception articulated in *McCormick*. In support of this position, Defendants note that KDOC revised its lethal injection protocol because it was ordered to do so by the Franklin Circuit Court, and it is this revised protocol, a "product" of the prior state litigation, which Baze seeks to challenge.

Because Baze does not expressly identify the prior Kentucky judgment as the source of his injury in the four corners of his proposed intervenor complaint, his claims does not present a clear case for application of the *Rooker-Feldman* doctrine. *McCormick*, 451 F.3d at 394. The question remaining, therefore, is whether the lethal injection protocol that Baze seeks to challenge is either enabled by, or is the inevitable consequence of, the prior Kentucky judgment to fall within the *McCormick* exception.

In *Abbott v. Michigan*, 474 F.3d 324 (6th Cir. 2007), a case decided after the parties completed their briefing on this issue, the Sixth Circuit squarely addressed the *McCormick* exception. In *Abbott*, in prior state court proceedings certain state prisoners unsuccessfully challenged a Michigan statute which permitted the state to make an assessment against a prisoner's ERISA-qualified retirement account to offset the costs of his incarceration. The prisoners subsequently brought a federal action asserting that the Michigan statute permitting the assessment violated ERISA and the Supremacy Clause

8

and seeking damages for injuries they received as a result of the application of the law.

The Sixth Circuit found that the facial challenge to the Michigan statute was not forbidden under *Rooker-Feldman* because the source of the alleged injury was the law itself, not the prior state court judgment. *Abbott*, 474 F.3d at 328. ("the *Rooker-Feldman* doctrine 'does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely a general challenge to the constitutionality of the state law applied in the state action, rather than a challenge to the law's application in a particular state case.'") (*quoting Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003)). The facial challenge was, however, barred under Michigan's rule of claim preclusion. *Id*. at 331.

With respect to the prisoners' claims for damages, the Sixth Circuit explained:

> In this case, the plaintiffs are ostensibly complaining of injuries caused by the actions of third parties-the conversion of their pension benefits by state officials-but those actions were the direct and immediate products of the state-court SCFRA judgments. The plaintiffs' claims and arguments make this clear: They assert that the state courts erred in issuing the SCFRA judgments and do not claim that the defendants have injured them in any way except by strictly executing those judgments. Accordingly, the plaintiffs' claims of specific injuries that they have suffered are actually challenges to the state-court SCFRA judgments and are barred by the *Rooker-Feldman* doctrine.

*Abbott*, 474 F.3d at 329. The facts and holding of the *Abbott* case illustrate the difficulty in determining when a defendant's conduct is truly the direct "product" of a prior state court judgment.[1] This much is clear: a broad reading of the range of conduct considered to be such a "product" would greatly expand the scope of cases covered by the *Rooker-Feldman* doctrine, a result contrary to the Supreme Court's express direction in *Exxon Mobil*.[2]

---

[1] Indeed, even the narrow test devised by this Court, *supra,* to determine when such conduct is the "product" of the state court judgment, *i.e.*, that the conduct is "either enabled by, or is the inevitable consequence of, the prior state judgment," bears an uncomfortable similarity to the "inextricably intertwined" test rejected as an analytically unsound tautology in *Exxon Mobil*.

[2] The circumstances of the *Abbott* case are instructive. In *Abbott*, it appeared that the state court defendants were seeking assessments under the Michigan statute before the state court litigation was concluded. Accordingly, it is hard to consider the assessments sought after the litigation concluded as anything other than a continuation of Michigan's prelitigation efforts to enforce the law as written, not as a direct consequence of Michigan's prevailing position in the state court litigation. Nonetheless, the Sixth Circuit found that it was a "product" of that favorable outcome. If applied

9

Considering the *McCormick* exception in light of the Supreme Court's caution in *Exxon Mobil* regarding the limited scope of cases within the reach of the *Rooker-Feldman* doctrine, the Court concludes that the conduct complained of in Baze's proposed intervenor complaint is not the "product" of the prior Kentucky state court litigation, and hence is not prohibited under the *Rooker-Feldman* doctrine. In making this determination, the Court notes that at the time Baze instituted the action in Franklin Circuit Court, KDOC was not "applying" the lethal injection protocol to Baze, and was still not doing so at the time Baze filed his motion to intervene in this action, nor was there an imminent threat that it would do so in the near future at either point in time. In both complaints, Baze is challenging the constitutionality of an ongoing policy of the KDOC. The minor change in Kentucky's lethal injection protocol required by the Kentucky state courts does not change this result, as the change does not appear to affect the core of Baze's allegations, and his challenge goes to a number of policies and procedures which had been in place for many years prior to the conclusion of the state court litigation. Because Baze does not identify the judgment of the Kentucky state courts as the source of his injury, and because the injury about which he does complain, the future conduct of KDOC officials in implementing the lethal injection protocol in carrying out his death sentence, is not the "product" of that litigation, the *Rooker-Feldman* doctrine does not apply to prevent Baze from asserting his claims here.

---

in this fashion, the *McCormick* exception would appear likely to swallow the rule of *Exxon Mobil*.

In order to prevent the *McCormick* "exception" from blurring the distinction between the *Rooker-Feldman* doctrine and preclusion principles which the Supreme Court sought to reinvigorate in *Exxon Mobil*, the "exception" should be read narrowly to apply to only those scenarios where the conduct complained of by the plaintiff in the subsequent federal action is not merely consistent with the prior state court judgment, but is an evident consequence of it. Requiring some causal connection makes a clearer case for application of the exception. For example, imagine a plaintiff who unsuccessfully resists a mortgage foreclosure action on his home in state court. Upon the bank's motion for an order for sale, the homeowner challenges the notice from the bank as not timely sent and inadequate to advise him of his right of redemption. The homeowner loses in state court, and then brings a subsequent action in federal court asserting that the foreclosing bank's conduct at the master commissioner's sale violated his due process rights on the same grounds. Apart from whether the claims are barred under preclusion principles, the second action is clearly an attack upon conduct that was enabled by the state court's prior judgment, and hence would fall squarely within the *McCormick*'s grounds for application of the *Rooker-Feldman* doctrine, notwithstanding its failure to expressly identify the prior state court judgment as the source of the injury.

## II. MOTION TO INTERVENE

### A. Permissive Intervention.

Baze seeks permission to intervene in this action pursuant to Federal Rule of Civil Procedure 24(b), which provides:

> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

To establish a viable case for permissive intervention, a proposed intervenor must show that its motion to intervene is timely made and that he or she alleges at least one question of law or fact common to those already before the court. The court must then consider whether permitting intervention will cause any undue delay or prejudice to the existing parties, and balance any other relevant factors to determine whether intervention should be allowed. *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

With respect to satisfying these factors, the Court finds that the grounds supporting Baze's motion to intervene are not materially different from those presented by Leonard. Baze filed his motion before any discovery had taken place, and subsequent developments have not significantly changed the procedural posture of this case. Baze's allegations regarding the constitutionality of Kentucky's lethal injection protocol present common issues of fact and law to those allegations made by Moore and Leonard, notwithstanding the presence of certain facts unique to Baze which may alter the analysis of his claims somewhat. And it does not appear that permitting Baze to intervene at this juncture would prejudice any of the existing parties. The evaluation of these factors counsels in favor of granting Baze leave to intervene. The Court will, however, consider whether Baze's claim is barred by claim preclusion as a relevant factor in determining whether intervention should be allowed. *United States v. Michigan*, 424 F.3d at 445.

B.    **Claim Preclusion.**

Having filed his motion to intervene 5 days after losing his appeal before the Kentucky Supreme Court, Baze understandably spends the bulk of his moving papers asserting that his claims are not barred by res judicata, also known as claim preclusion. The rule permitting a movant to seek intervention in an existing action presupposes that the movant has a right to maintain a claim for the relief he seeks. *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 481 (S.D.N.Y. 1973) (intervention denied for lack of standing to assert claim); *Rhode Island Federation of Teachers, AFL-CIO v. Norberg*, 630 F.2d 850 (1st Cir. 1980) (movant seeking intervention, by right or by permission, must state a colorable claim or defense to the action); *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560 (2d Cir. 2005). In addition, because Baze seeks relief against government officers, federal law requires the Court to review the proposed intervenor complaint to ensure that the claims are not frivolous or fail to state a claim. 28 U.S.C. § 1915A ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

The federal rule of claim preclusion acts to bar a claim where there is:

(1) a prior final decision on the merits by a court of competent jurisdiction;

(2) a subsequent action between the same parties or their 'privies';

(3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and

(4) an identity of the causes of action.

*Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002).

State courts afford such preclusive effect to prior judgments of courts within the same state by common law rule. *See Yeoman v. Com., Health Policy Board*, 983 S.W.2d 459, 464 (Ky. 1998). The federal constitution requires the state courts of one state to afford such preclusive effect to the final

judgments of courts located in other states. U.S. Const., Art. IV, § 1. While that constitutional command does not apply to federal courts, by statute Congress has required federal courts to similarly afford full faith and credit to state court judgments. 28 U.S.C. § 1738.

In determining the scope of the preclusive effect to be given to a prior state court judgment, Section 1738 requires a federal court to give a state court judgment the same preclusive effect as would a state court in the state where the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81-85 (1984); *McCormick*, 451 F.3d at 397. Accordingly, this Court must apply Kentucky preclusion law to determine the scope of the preclusive effect to be given to a prior judgment of one of its courts.

In Kentucky, claim preclusion applies to bar "not only to the issues disposed of in the first action, but to every point which properly belonged to the subject of the litigation in the first action and which in the exercise of reasonable diligence might have been brought forward at the time." *May v. Webb*, Ky.App., 2004 WL 1699910 (2004); *Whittaker v. Cecil*, Ky., 69 S.W.3d 69, 72 (2002) (final judgment precludes subsequent litigation of claims that were or could have been presented in the prior action). In the Complaint filed in Franklin Circuit Court, Baze and Bowling asserted that the Defendants' lethal injection protocol would violate the Eighth Amendment because of the use of pancurium bromide; the combination and sequence of the drugs involved; inadequate training of the execution team; inadequate medical equipment; the use of a "cut-down" procedure; and the refusal to publicly disclose the lethal injection protocol.

In his motion to intervene and in his reply in further support of his motion to intervene, Baze implicitly concedes that the claims he seeks to present in this case are the same as those previously raised and rejected in the Kentucky courts. He does not argue that res judicata does not apply here; rather, he asserts that he was not afforded a full and fair opportunity to litigate those claims before the

Kentucky courts. Having reviewed Baze's complaint in the action before the Franklin Circuit Court and his proposed intervenor complaint, there is no question that the elements required for claim preclusion to apply are satisfied here. Baze was a party to the Kentucky action, and raised an Eighth Amendment challenge to myriad aspects of Kentucky's lethal injection protocol, which was rejected on the merits by the Franklin Circuit Court, and that judgment was upheld on appeal by the Kentucky Supreme Court. The claims he asserts here were actually raised and rejected in those proceedings; to the extent Baze's present proposed intervenor complaint does not identically mirror that filed in the state court action, his new or additional claims are certainly of such a character that they "properly belonged to the subject of the litigation in the first action." Baze's claims are therefore barred by claim preclusion, *Whittaker v. Cecil*, Ky., 69 S.W.3d 69, 72 (2002); *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002), unless Baze can demonstrate an exception to the application of that doctrine.

### C.     Full and Fair Opportunity.

In *Montana v. United States*, the Supreme Court set forth the basic rule of claim preclusion:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies."

*Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)); *Allen v. McCurry*, 449 U.S. 90, 101 (1980) ("Congress [did not intend] to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous.").

The finality to be afforded a prior judgment, however, assumes that the process used to reach that judgment was sound in its fundamentals: "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana,* 440 U.S. at 164 n.11. The Supreme Court has found that the "doubt" to which the *Montana* Court referred

14

can be found in only a single set of circumstances:

> [T]he judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate the claim or issue.

*Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480-81 (1982).

In his motion to intervene, Baze asserts that he was denied a "full and fair opportunity" to litigate his claims regarding the lethal injection protocol because the state circuit court denied him the opportunity to depose the execution team members in an effort to obtain further information about how that protocol would, as a practical matter, be carried out. The record reveals that Baze sought review of the circuit court's ruling by seeking a writ from the Kentucky Supreme Court, a request denied on procedural grounds. As previously noted, Baze alleges that he pursued this discovery issue to the Kentucky Supreme Court on direct appeal, a fact the Defendants contest but on which the record is silent. For their part, the Defendants contend that Baze was granted ample discovery during the state court proceedings, and that Baze was afforded a further opportunity to rectify any deficiency in discovery by pursuing this issue on appeal, citing *Kremer*, 456 U.S. at 481 ("A party's fail[ure] to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy.").

Where the prior adjudication at issue was rendered by a state, rather than federal, court, the full faith and credit statute, 28 U.S.C. § 1738, applies. In such instances,

> [S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.

*Kremer*, 456 U.S. at 481.[3]

---

[3] Even after the Supreme Court articulated its due process standard in *Kremer*, some courts have held that a prior state court litigant was denied a full and fair opportunity to litigate an issue when "without fault of his own the [party to be estopped] was deprived of crucial evidence or witnesses in the first litigation." *E.g., General Dynamics Corp. v. American Tel. & Tel. Co.*, 650 F.Supp. 1274, 1288 (N.D. Ill. 1986) (*quoting Blonder-Tongue Lab., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313 (1971)). The error in reliance on *Blonder-Tongue* is three-fold. First, that decision, entered in 1971, was entirely or substantially superseded by *Kremer* in 1982. Second, *Blonder-Tongue* involved a prior *federal* decision, and hence was not subject to Section 1738, from which the Supreme Court derived its due process

15

The Fourteenth Amendment's Due Process Clause requires, in essence, notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985) ("The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.") (citing Henry Friendly, "SOME KIND OF HEARING," 123 U. PA. L. REV. 1267, 1281 (1975)); *see also Armstrong v. Manzo*, 380 U.S. 545, 550, 552 (1965) ("'Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.")

As a plaintiff in the Franklin Circuit Court action, Baze does not and can not contend that he lacked adequate notice of the proceedings below. His challenge to the propriety of the circuit court's discovery ruling denying him the opportunity to depose members of the execution team is more appropriately considered a challenge to the sufficiency of his "opportunity to be heard." In essence, Baze asserts that the denial of that discovery prevented him from obtaining the full measure of the evidence that he wished to present in support of his constitutional claim. To be sure, if a party's ability to muster evidence in support of his claim is so drastically circumscribed as to render his opportunity to be heard little more than an empty gesture, the Due Process Clause would be violated. *See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is 'the opportunity to be heard.'

---

analysis applicable to review of prior state court decisions. *See Brown v. St. Louis Police. Dept.*, 691 F.2d 393, 395 (8th Cir. 1982) ("The Supreme Court has expressly distinguished between causes of action previously litigated in a state court and those formerly tried in a federal court.") Finally, the prior decision under review in *Blonder-Tongue* was one of patent invalidity, which under *Triplett v. Lowell*, 297 U.S. 638 (1936), had been completely insulated from the defense of claim or issue preclusion. Abrogating that rule for the first time, the Supreme Court sought to mitigate the impact of the decision by providing patent owners with defenses to a claim of collateral estoppel far beyond those available to ordinary litigants, including defenses related to choice of forum, a privy's incentive to litigate, the trial court's adherence to *Graham v. John Deere Co.*, deprivation of crucial evidence or witnesses, and the trial court's utter failure to grasp the technical subject matter and issues in suit. *Blonder-Tongue*, 402 U.S. at 333. In sum, the *Blonder-Tongue* standard has no bearing on the "full and fair opportunity" exception as applied to prior state court decisions.

It is an opportunity which must be granted at a meaningful time and in a meaningful manner.") (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). A party's opportunity to be heard must be "full and fair."

But as Defendants indicate, discovery in the Franklin Circuit Court was available to Baze from August 2004 until the trial in April 2005. Baze did not move to compel the Defendants to permit the depositions of the execution team members until January 1, 2005, approximately five months after Baze's complaint was filed. Baze deposed over a dozen individuals from KDOC and twenty witnesses testified over the course of a seven-day trial. Those cases in which the courts have denied res judicata effect to prior state proceedings have typically involved quasi-judicial proceedings where the hearings were held with only a few days' notice, the opportunities to present evidence or arguments were strictly limited, and the scope of appeal was very narrow. The full trial on the merits here stands in stark contrast to such limited proceedings.

Baze points to this Court's conclusion about the relevance of testimony from execution team members as grounds for arguing that the Franklin Circuit Court's purportedly contrary conclusion rendered those proceedings constitutionally deficient. As a threshold matter, Baze's argument fails on evidentiary grounds: simply put, Baze's failure to put evidence in the record regarding the basis for his discovery requests, the Defendants' opposition thereto, and the Circuit Court's denial of that request prevents the Court from drawing any conclusions regarding the Franklin Circuit Court's view of the discoverability and relevance of that information.

Even if this Court were to disagree with the conclusions of the state court regarding the appropriateness of the requested discovery, that disagreement affords no basis for concluding that the state court judgment was rendered without affording Baze a full and fair opportunity to present his claims. *Allen v. McCurry*, 449 U.S. 90, 101 (1980) ("Congress [did not intend] to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's

decision may have been erroneous."). Section 1738 requires federal courts to afford full faith and credit to all state court judgments entered in compliance with the requirements of the Due Process Clause. It does not permit a federal district court to sit as a *de facto* federal appeals court, giving effect to only that subset of state court judgments which the federal district court finds were entered free of error:

> While the district court agreed that the state courts had erroneously applied the relation-back doctrine, it recognized that a state court's misapplication of its own law was not a legitimate basis for avoiding the application of res judicata principles. ... [In *Montana* and *Kremer*], [t]he Supreme Court did not intend for parties to be able to bring a § 1983 action reasserting the same claims every time there was evidence that a state court misapplied its own law in a prior adjudication. Rather, the Court defined the content of the "full and fair opportunity" requirement by stating that the "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer*, 456 U.S. at 481. Thus, as long as a state's procedures were constitutionally sufficient, the fact that a state court may have erroneously applied its own law does not mean that it denied a plaintiff a full and fair opportunity to litigate its claims. ... For obvious reasons, the Court declines to transform the federal district courts into state appellate courts.

*Rainey Bros. Constr. Co. v. Memphis and Shelby Co. Bd. of Adjustments*, 1999 WL 220128, *3 (6th Cir. 1999) (unpublished disposition); *see also Am. Nat'l Bank & Trust Co. v. City of Chicago*, 826 F.2d 1547, 1550 (7th Cir. 1987) ("due process requires only that a person have a meaningful opportunity to present his claims; it does not guarantee success.").

Here, the testimony of the execution team members may indeed have been relevant to Baze's claims in the Kentucky litigation. However, the possible relevance of this evidence is simply immaterial as long as the proceedings Baze was provided to obtain the evidence were consistent with Due Process requirements. The proceedings before the Kentucky state courts need not be free from error in order to be afforded full faith and credit, they need only satisfy the minimum requirements of the Due Process Clause. The record before the Court indicates that the prior proceedings amply satisfied Baze's right to procedural due process, and are entitled to full faith and credit. *Abbott v. Michigan*, 474 F.3d 324 (6th Cir. 2007). Because the claims asserted in Baze's proposed intervenor complaint are barred by claim

18

preclusion under 28 U.S.C. § 1738, Baze's motion to intervene in these proceedings must be denied.

*United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

## CONCLUSION

Accordingly, **IT IS ORDERED AS FOLLOWS**:

1. Baze's "Motion for Leave to Supplement Ralph Baze's Reply to Response in Opposition to Emergency Motion to Intervene as Plaintiff-Intervenor" [Dkt. 114] is **GRANTED**.

2. Plaintiffs Moore and Leonard's "Joint Motion to Strike the Portions of Defendants' *Rooker-Feldman* Memorandum that Argue that Moore and Leonard's Suit Should be Dismissed" [Dkt. 129] is **DENIED**; their "Joint Motion for Leave to File a Response to Defendants' *Rooker-Feldman* Memorandum" [Dkt. 130] is **GRANTED**.

3. Baze's "Emergency Motion to Intervene as Plaintiff-Intervenor" [Dkt. 101] is **DENIED**.

4. The following motions by proposed intervenor Ralph Baze:

    a. "Emergency Motion to Compel Defendants to Conduct Appropriate Background Checks on all Present Members of the Execution Team and to Disclose to Counsel for Baze All Non-Identifying Results of those Checks" [Dkt. 162];

    b. "Emergency Motion to Partially Lift Order Staying Discovery" [Dkt. 163];

    c. "Emergency Motion for a Status Conference on Litigation Concerning Ralph Baze and for a Scheduling Order Setting Deadlines to Respond to Motions and to Comply with any Discovery" [Dkt. 164];

    d. "Emergency Motion for a Preliminary Injunction Barring Ralph Baze's Execution Pending the Supreme Court of the United States' Disposition of the Petition for Certiorari in *Cooey v. Strickland*" [Dkt. 165];

    e. "Emergency Motion to Compel Defendant to Disclose a Copy of the Execution Protocol it Intends to Use to Execute Ralph Baze" [Dkt. 167];

    f. "Emergency Motion for a Preliminary Injunction Barring Ralph Baze's Execution Pending a Ruling on his Motion to Intervene" [Dkt. 172];

    g. "Emergency Motion for a Preliminary Injunction Barring Ralph Baze's Execution Pending Resolution of the Merits of his Challenge to Defendants' Lethal Injection Chemicals and Procedures" [Dkt. 177]; and

    h. "Emergency Motion for Leave under Local Rule 7.1 to File a Memorandum of Law in Excess of 40 Pages in Support of Ralph Baze's Emergency Motion for a Preliminary

        Injunction Pending Resolution of the Merits of his Challenge to Defendants' Lethal Injection Chemicals and Procedures" [Dkt. 178]

        are **DENIED AS MOOT**.

5.    This is a final and appealable order and there is no just cause for delay.

Dated this 25th day of September, 2007.

Signed By:
*Karen K. Caldwell* KKC
**United States District Judge**