UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

** CAPITAL CASE **

CIVIL ACTION NO. 06-CV-22-KKC

BRIAN KEITH MOORE  PLAINTIFF

VS:  **MEMORANDUM OPINION AND ORDER**

JOHN D. REES, ET AL.  DEFENDANTS

*** *** *** *** ***

Roger Dale Epperson, a Kentucky death row inmate, has filed a motion to intervene in this action by permission under Rule 24(b). [Dkt. 137] The Defendants oppose the motion, asserting that Epperson did not exhaust his administrative remedies prior to filing his request to intervene and asserting that his request is not timely filed. [Dkt. 141] Epperson responds that his failure to exhaust administrative remedies should be excused as futile in light of established policy by the Kentucky Department of Corrections ("KDOC") and that his motion was timely brought. [Dkt. 142]

Defendants then filed an affidavit in support of their response, which indicates that Epperson had filed no grievance with KDOC regarding the lethal injection protocol. [Dkt. 143] Epperson responded by filing a motion to permit further briefing to respond to the affidavit. [Dkt. 144] In his tendered sur-reply, Epperson alleges that he joined in a July 21, 2004 group grievance, permitted pursuant to KDOC's Corrections Policies and Procedures ("CPP") 14.6(II)(D), regarding KDOC's lethal injection procedures. Epperson has provided a group grievance form on which he is the first signatory, although the form does not itself indicate the subject matter of the grievance. In their

1

response, Defendants concede that Epperson joined in this group grievance, explaining that their records did not reveal Epperson as having grieved this issue because Ralph Baze was the lead inmate in the group grievance, and Epperson's name was accordingly not indexed as part of that grievance. [Dkt. 149]

## DISCUSSION

Epperson seeks permission to intervene in this action pursuant to Federal Rule of Civil Procedure 24(b), which provides:

> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

To establish a viable case for permissive intervention, a proposed intervenor must show that its motion to intervene is timely made and that he or she alleges at least one question of law or fact common to those already before the court. The court must then consider whether permitting intervention will cause any undue delay or prejudice to the existing parties, and balance any other relevant factors to determine whether intervention should be allowed. *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

The Court concludes that Epperson's motion to intervene is timely brought. The question to be answered in determining whether a motion to intervene is timely brought is not whether the *claim* of the proposed intervenor is timely asserted, a matter governed by the statute of limitations and the doctrine of laches, but rather how long the proceeding has been pending and the length of time the proposed intervenor waited before seeking to intervene after becoming aware of the factual and/or legal basis for doing so. *Heartwood, Inc. v. U.S. Forest Service, Inc.*, 316 F.3d 694, 700-01 (7th Cir.

2003) (timeliness of motion to intervene is assessed in light of (1) length of time the intervenor knew or should have known of her interest in the case; (2) prejudice to the original parties by the delay; (3) prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances). Epperson waited until the conclusion of his direct appeal from his criminal prosecution before seeking to intervene in this case. While Epperson might have been able to seek intervention prior to that point, his decision to wait until the conclusion of that appeal is not an unreasonable one. The allegations and claims presented in Epperson's Complaint are nearly identical to those asserted by existing plaintiffs Moore and Leonard, and hence present issues of fact and law common to those already present in this case.

Even where a proposed intervenor does not unreasonably delay in seeking to intervene in a case, a district court may nonetheless deny the application where permitting intervention would prejudice the interests and rights of the existing parties. In this case, however, the parties have conducted only limited discovery, and further discovery has been stayed pending the resolution of certain preliminary legal matters. In light of the procedural posture in this case, the Court concludes that the existing parties would not be unduly prejudiced by permitting Epperson to intervene in this action.

The Court may consider other relevant factors to determine whether intervention should be allowed, *United States v. Michigan*, 424 F.3d at 445, such as the existence of a legal bar to the claim sought to be asserted by the proposed intervenor. The Defendants initially asserted that Epperson should not be permitted to intervene because he failed to exhaust his administrative remedies. However, they appear to have subsequently acknowledged that he did exhaust those remedies in light of his participation in a "group grievance" regarding the lethal injection protocol filed by Ralph Baze

as the lead petitioner and approximately twenty other inmates. [Dkt. 149]

Because the documents submitted by Epperson suggest that he did file an inmate grievance regarding the lethal injection protocol and because the Defendants appear to have abandoned the question of exhaustion of administrative remedies for purposes of Epperson's motion to intervene, the Court will grant that motion. The Court will, however, briefly address additional arguments raised by Epperson.

Epperson asserts that "it is an open question whether an intervening party is required to exhaust administrative remedies." This is so, Epperson asserts, because by intervening in an existing action he will become not an ordinary party but a "joint party" to the underlying action. From this dubious premise, Epperson concludes that "the denial of Moore's and Leonard's grievances imputes to Epperson, thereby obviating the need for him to exhaust administrative remedies." Epperson attempts to marshal support for this view from the Court's decision to permit Leonard to intervene in this action without affirmatively requiring a demonstration that he exhausted his administrative remedies.

When a non-party to an action is granted leave to intervene in a case, the Court is permitting that person to become a party to the case, aligned as a plaintiff or defendant as his or her interests may indicate. *In re Willacy Co. Water Control & Imp. Dist. No. 1*, 36 F. Supp. 36, 40 (S.D. Tex. 1940); *First Nat. Bank in Greensburg v. M & G Convoy, Inc.*, 102 F. Supp. 494, 500 (D.C. Pa. 1952). Indeed, the only difference between intervention of right and joinder is which party initiates the addition of a new party to the case. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 438 F.Supp. 440, 445 ( E.D.N.Y. 1977). It is thus clear that Epperson is an ordinary party to this case, and Epperson's use of the term "joint party," a term or status notably absent from either the

4

Federal Rules of Civil Procedure or established precedent, does not alter the legal effect of his intervention - he has the same rights and obligations as the existing plaintiffs to this action.

The cases cited by Epperson, *Strinfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987) and *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994), involve questions of an intervenor's rights on appeal and standing; these authorities do not suggest an intervenor's status is anything other than a "party" to the litigation. The "interests" which may support intervention are broader than standing, *Hobson v. Hansen*, 44 F.R.D. 18, 26-27 (D.C.D.C. 1968) (intervention is concerned not with standing to sue but with protecting interests which practically speaking can be protected only through intervention in current proceedings), and hence may be permitted to those who lack formal standing to assert each of the claims which may already be present in the proceeding. *Day v. Sebelius*, 376 F.Supp.2d 1022, 1030 (D. Kan. 2005).

Once a non-party has been granted leave to intervene, they initiate their participation in the lawsuit by filing a complaint as a plaintiff or answer as a defendant. Here, Epperson tendered a 62-page Complaint numbering 503 paragraphs, asserting 29 claims and seeking a broad range of declaratory and injunctive relief. Having been granted leave to intervene, Epperson's tendered Complaint will be filed into the record, the Defendants are required by the Federal Rules of Civil Procedure to file a response to that Complaint. As a plaintiff, Epperson will be bound by a final judgment in this matter as fully as any other party. *Galbreath v. Metro. Trust Co. of California*, 134 F.2d 569, 570 (10th Cir. 1943) (intervenor becomes a party to the suit and is bound by all prior orders and adjudications of fact and law as though he had been a party from commencement of suit); *Carmichael v. Allen*, 267 F. Supp. 985, 991 (N.D. Ga. 1966) (state which intervened in declaratory judgment action is bound by findings of fact and conclusions of law regarding determination of

validity of statute as would any other party to suit). As a party plaintiff bringing suit to challenge Kentucky's implementation by lethal injection of his death sentence, there is no question that Epperson is subject to the exhaustion requirements of 28 U.S.C. § 1997e.

Epperson further asserts that because Leonard has already been permitted to intervene without demonstrating that he had exhausted his administrative remedies, the Court has indicated its agreement with his argument that he is a mere "joint party" who is entitled to the benefit of exhaustion completed by his co-plaintiffs. This argument is without basis. The Court's prior opinion did not and could not expressly agree with his current argument, articulated for the first time months after the Court had already entered its Memorandum Opinion and Order. Nor is there any basis to infer the Court's agreement with his current argument from the Court's prior opinion. At the time Leonard sought intervention, he made no argument logically related to that asserted by Epperson here, and the Court's decision to grant permission for Leonard to intervene was not premised -- factually, logically, or legally -- upon any justification for his failure to exhaust administrative remedies.

Finally, Epperson asserts that he should be excused from the exhaustion requirement because KDOC has previously rejected grievances from other inmates as a non-grievable issue, and hence pursuit of his own administrative grievance would be futile in light of the KDOC's established policy. While there exists a "futility exception" to the judicially-created exhaustion requirement for habeas corpus petitions, the Supreme Court expressly rejected the existence of such an exception for civil rights actions subject to the PLRA years ago. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Hix v. Tennessee Dept. of Corrections*, (6th Cir. 2006).

In addition, the factual premise for Epperson's futility argument is based upon rejection notices issued by KDOC in 2004. Those notices stated simply that the issue was non-grievable because KDOC's protocol was mandated by the legislature or the result of a court order.[1] However, the rejection notices issued by KDOC in 2006 also address the merits of the grievance -- asserting that KDOC's methods of execution are humane and have withstood legal challenges -- as an the alternative basis to reject the grievance. KDOC's rejection of the grievance on the merits, even as an alternative basis for rejecting the grievance, may justify the conclusion that KDOC has now made its grievance procedure "available" as an administrative remedy within the meaning of 28 U.S.C. § 1997e(a), thus undercutting the factual basis for the argument that pursuit of an administrative remedy would be futile.

## CONCLUSION

Having concluded that Epperson's motion to intervene was timely asserted and his intervention in these proceedings would not unduly prejudice the existing parties, the Court will permit Epperson's intervention in this matter. Accordingly,

**IT IS ORDERED AS FOLLOWS:**

1. Epperson's "Motion for Leave to File Supplemental Reply to Defendants' Response in Opposition to Roger Dale Epperson's Motion to Intervene as Plaintiff-Intervenor" [Dkt. 144] is **GRANTED**.

---

[1] CPP 14.6(II)(B) provides that "grievable issues shall include all aspects of an inmate's life in prison that are not specifically identified as a non-grievable issue." KDOC's determination that a challenge to its lethal injection protocol is non-grievable appears to rest exclusively on CPP 14.6(II)(C)(1), which indicates that an "appeal of a court decision or order" is a non-grievable issue. None of the other classes of non-grievable issues identified in CPP 14.6(II)(C) appear to apply. In addition, subsection B provides a non-exclusive list of grievable issues, including (2) "Corrections policies and procedures" and (3) "institutional policies and procedures." Resolution of the question whether, in determining if KDOC's grievance process is "available" under Section 1997e(a) to challenge its lethal injection protocol, the most pertinent factor should be the text of CPP 14.6 itself or KDOC's interpretation of that text, giving substantial deference to an agency's interpretation of its own regulations under *Chevron*, will await the more complex determination of the plaintiffs' satisfaction of the exhaustion requirement in light of *Jones v. Bock*, 127 S.Ct. 910 (2007).

7

2. Roger Dale Epperson's "Motion to Intervene as Plaintiff-Intervenor" [Dkt. 137] is **GRANTED** and the Clerk of the Court is directed to file his tendered Intervenor Complaint into the record.

Dated this 1st day of October, 2007.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge