UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

**BRIAN KEITH MOORE and
ROGER DALE EPPERSON,**

     **Plaintiffs,**

**V.**

**JOHN D. REES, et al.,**

     **Defendants.**

CIVIL ACTION NO. 3: 06-22-KKC

**MEMORANDUM OPINION
AND ORDER**

This matter is before the Court to address several issues previously raised in this proceeding, including:

> • whether the plaintiffs' claims are barred by the statute of limitations under *Cooey v. Strickland*, 479 F. 3d 412 (6th Cir. 2007) [R. 139, 146, 154, 157, 212, 213, 231, 232];

> • whether their claims survive the Supreme Court's decision in *Baze v. Rees*, 553 U.S. 35 (2008) [R. 211, 212, 213, 220]; and

> • whether their claims were rendered moot by subsequent revisions to Kentucky's lethal injection protocol following the Kentucky Supreme Court's decision in *Bowling v. Kentucky Dept. of Corrections*, 301 S. W. 3d 478 (Ky. 2009) [R. 228, 230, 231, 232].

These matters have been thoroughly briefed and are ripe for decision.

## Background

Plaintiff Brian Keith Moore is an inmate confined at the Kentucky State Penitentiary in Eddyville, Kentucky.  In 1984, a Kentucky jury convicted Moore of the 1979 robbery, kidnapping, and murder of Virgil Harris, and subsequently sentenced Moore to death.  The Kentucky Supreme Court affirmed the conviction and sentence, and the United States Supreme Court denied his petition for a writ of *certiorari* on March 26, 1990.  *Moore v. Commonwealth*, 771 S. W. 2d 34 (Ky. 1988), *cert. denied*, 494 U.S. 1060 (1990).

For his part, co-plaintiff Roger Dale Epperson was convicted in 1987 for the August 1985 robbery, burglary, and attempted murder of Dr. Roscoe Acker and the murder of ten—year—old Tammy Acker, and was sentenced to death for the murder.  The Kentucky Supreme Court affirmed on direct appeal, and the United States Supreme Court denied his petition for a writ of *certiorari* on January 21, 1992.  *Epperson v. Commonwealth*, 809 S. W. 2d 835 (Ky. 1991), *cert. denied*, 502 U.S. 1065 (1992).  See *Hodge v. Commonwealth*, 68 S. W. 3d 338 (Ky. 2002) (Brief for Appellee, *Epperson v. Commonwealth*, 2000 WL 34332770, at *2 (May 25, 2000)).

Epperson was also separately convicted and sentenced to death for the June 1985 robbery, burglary, and double murder of Edwin Morris and his wife Bessie Morris.  After the original 1987 conviction was vacated, Epperson was retried and again convicted.  The Kentucky Supreme Court affirmed on direct appeal, and the United States Supreme Court denied his petition for a writ of *certiorari* on March 19, 2007.  *Epperson v. Commonwealth*, 197 S.W.3d 46 (Ky. 2006), *cert. denied*, 549 U.S. 1290 (2007).

After Epperson's conviction and Moore's first conviction became final, effective on March 31, 1998, Kentucky revised its criminal statutes to provide that a sentence of death shall be carried out by lethal injection.  Ky. Rev. Stat. 431.220(a).  Prisoners like Moore and Epperson who were sentenced to death before the effective date are permitted to choose death by electrocution if they file that election at least 20 days before their scheduled execution.  Ky. Rev. Stat. 431.220(b).  Because the statute did not specify what chemicals were to be used for the lethal injection or how the procedure was to be carried out, the Kentucky Department of Corrections ("KDOC") created an informal protocol addressing these matters.  *Bowling v. Kentucky Dept. of Corrections*, 301 S. W. 3d 478, 482 (Ky. 2009).  That protocol called first for the injection of three grams of sodium thiopental, then for fifty

2

milligrams of pancuronium bromide, and finally for 240 milliequivalents of potassium chloride. *Baze v. Rees*, 553 U.S. 35, 45 (2008).

On April 19, 2006, Moore filed his complaint in this action pursuant to 42 U.S.C. § 1983, contending that Kentucky's intended use of its lethal injection protocol to carry out his sentence of death would constitute cruel and unusual punishment in violation of the Eighth Amendment. Moore's complaint takes issue with numerous particulars of how the lethal injection would be administered, such as the identity, quantity, and order of administration for the three drugs involved in the protocol; the means for inserting an intravenous line; the adequacy of the experience and training of those who would administer the procedure; and the absence of life-saving equipment. Moore also contended that he possessed unique physical characteristics, including compromised veins from prior drug use and a heart attack as well as obesity, which would render it more likely that following the lethal injection protocol would cause him excruciating pain. [R. 1]

Epperson filed a motion to intervene in this action on March 19, 2007, contending that his claims challenging Kentucky's lethal injection protocol shared a common legal and factual basis with Moore's. [R. 137] Epperson's complaint mimicked Moore's in most respects, but unlike Moore he did not contend that he had any medical conditions which would complicate the administration of the lethal injection protocol. [R. 142 at 3-5] Instead, Epperson's complaint contended only that the protocol – as written and as actually administered – would violate the Eighth Amendment. [R. 194] The Court granted Epperson's motion to intervene on October 1, 2007. [R. 192]

Several years before Moore or Epperson raised these issues in this Court, fellow death row inmates Thomas Clyde Bowling and Ralph Baze had done so in 2004. In August of that year – represented by the same counsel who represent Moore and Epperson in this case – they filed a complaint in the Circuit Court of Franklin County, Kentucky, which was

3

essentially indistinguishable from those filed by the plaintiffs in this case.   Baze and Bowling challenged the constitutionality of Kentucky's lethal injection protocol, the state's refusal to disclose the protocol, the use of a "cut-down" procedure to obtain venous access, and the alleged lack of training of execution team members.   They also challenged the constitutionality of electrocution as a means of execution.  [R. 111-2]  Following discovery and a bench trial, the trial court in *Baze v. Rees*, No. 04-CI-1094 (Franklin Cir. Ct. 2004) upheld the constitutionality of electrocution and the lethal injection protocol in all pertinent respects.  [R. 38-2]; *Baze v. Rees*, 553 U.S. 35 (2008) (Joint Appendix, 2007 WL 4790797, at *754-769 (Nov. 5, 2007)).  The Kentucky Supreme Court affirmed on direct appeal, likewise holding that electrocution and Kentucky's lethal injection protocol did not conflict with the federal Constitution's prohibition against cruel and unusual punishment.  *Baze v. Rees*, 217 S. W. 3d 207 (2006).[1]

The United States Supreme Court then granted Baze and Bowling's petition for a writ of *certiorari*, and squarely held that Kentucky's lethal injection protocol, the very same one at issue in Moore and Epperson's complaints and challenged on many of the same grounds, did not violate the Constitution.  *Baze v. Rees*, 553 U.S. 35 (2008).  In doing so, the Supreme Court rejected the claim that Kentucky's protocol violated the Eighth Amendment simply because it did not and could not eliminate all risk of pain or any chance that the protocol would not be precisely followed.   *Id*. at 48-51.   The Court also specifically considered and rejected a variety of concerns proffered by the inmates, including but not limited to difficulties in properly inserting intravenous catheters and inadequate facilities and training.  *Baze*, 553 U.S. at 54-55.

---

[1]  This Court later denied Baze and Bowling's motions to intervene in this proceeding because the adverse termination of their state court proceedings precluded the assertion of the same or similar claims here.  [R. 188, 190]

Independent of their respective Eighth Amendment challenges, in 2006 Bowling, Baze, and Moore filed a separate state court action contending that Kentucky's lethal injection protocol was unenforceable because it was not adopted as an administrative regulation in conformity with Kentucky's Administrative Procedure Act. The Kentucky courts ultimately found that Bowling and Baze were precluded from asserting this claim because it was one they could and must have pursued in their first state court action. *Bowling*, 301 S. W. 3d at 485 ("The availability of a declaratory action does not, however, mean that multiple declaratory actions may be filed *seriatim* challenging implementation of the death penalty on selected grounds. When a capital defendant files a declaratory judgment action, he must join all claims then available to him with regard to the implementation of his judgment because *res judicata* will apply full force to bar successive declaratory judgment actions."). Moore, however, was not so barred, and the Kentucky Supreme Court concluded that the KDOC was required to promulgate its lethal injection protocol as an administrative regulation. *Id*. at 488-91.

Following public notice and hearings [R. 226], on May 7, 2010, the KDOC formally promulgated its lethal injection procedures and protocol in regulations set forth at 501 K.A.R. 16:001-16:330. *Comm. ex rel. Conway v. Shepherd*, 336 S. W. 3d 98 (Ky. 2011). The initial version of the regulations retained the original three-drug protocol. *Wilson v. Rees*, 620 F. 3d 699, 701 (6th Cir. 2010) ("Here, the state merely adopted its preexisting protocol as a regulation, making no material changes to the method of execution."); see 2010 Ky. Reg. Text 209954 NS (June 1, 2010). But following additional litigation in the Franklin Circuit Court, KDOC further revised the regulations in 2012 and 2013. See 2012 Ky. Reg. Text 303221 NS (Dec. 1, 2012); 2013 Ky. Reg. Text 303221 NS (Apr. 1, 2013). Unlike the prior three-drug protocol, the revised protocol calls for the injection of a single dose of either three grams of sodium thiopental or five grams of pentobarbital. 501 K.A.R. 16:330 § 3(2).

5

If these drugs are unavailable within seven days before the execution, 501 K.A.R. 16:330 § 2(1) directs that the execution shall follow a two-drug protocol, calling for the injection of ten milligrams of midazolam and forty milligrams of hydromorphone.  501 K.A.R. 16:330 § 3(3).[2]

## Discussion

A.   <u>Moore and Eppersons' claims are barred by the statute of limitations</u>.

In their answers to the plaintiffs' complaints, the defendants assert that Moore and Epperson's claims are barred by the statute of limitations.  [R. 38 at 2; R. 195 at 2]  Shortly after this case was filed, the Sixth Circuit issued a decision regarding the accrual of method-of-execution claims in *Cooey v. Strickland*, 479 F. 3d 412 (6th Cir. 2007).  In *Cooey*, the Sixth Circuit determined that such a method-of-execution claim – that a state's particular method of carrying out a sentence of death violates the Constitution, particularly the Eighth Amendment's prohibition against cruel and unusual punishments – accrues upon the conclusion of direct review (or the expiration of time for seeking such review) of the prisoner's underlying conviction and sentence in the state courts.  *Id*. at 422.  If, however, the state did not adopt lethal injection as the method of execution until after direct review of the prisoner's conviction had concluded, then the claim accrues from the later date when the state adopts lethal injection as the method of execution.  *Id*.  In reaching its conclusion, the Sixth Circuit made clear that it is the state's adoption of the general method of execution (lethal injection), rather than the particular protocol for carrying it out, which triggers the accrual of the claim.  Accordingly, changes to the particular protocol will not delay or modify the accrual date.  *Cooey*, 479 F. 3d at 423-24.

---

[2]  KDOC has indicated that its secondary protocol, while still technically in force, will not be used.  On November 13, 2014, KDOC filed a notice in ongoing state litigation regarding the validity of its regulations, *Baze v. Rees*, No. 06-CI-574 (Franklin Cir. Ct. 2006), that it intended to eliminate or supplant the two-drug execution protocol it adopted as a secondary mechanism in 2012.  KDOC anticipated that issuing new regulations would take at least six months, but it appears that no new regulations have been issued to date.

In this case, the direct review of Moore's conviction and sentence concluded on March 26, 1990, when the United States Supreme Court denied his petition for a writ of *certiorari*. *Moore v. Commonwealth*, 771 S. W. 2d 34 (Ky. 1988), *cert. denied*, 494 U.S. 1060 (1990). Direct review of Epperson's first conviction and sentence concluded upon the Supreme Court's denial of *certiorari* on January 21, 1992. *Epperson v. Commonwealth*, 809 S. W. 2d 835 (Ky. 1991), *cert. denied*, 502 U.S. 1065 (1992). However, Kentucky did not establish lethal injection as the method of carrying out a sentence of death until March 31, 1998. Applying the Sixth Circuit's approach in *Cooey*, the Eighth Amendment method-of-execution claims for Moore and Epperson therefore accrued on March 31, 1998. *Cooey*, 479 F. 3d at 422.

Because 42 U.S.C. § 1983 does not provide its own statute of limitations, courts apply the most analogous statute of limitations from the state where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). For constitutional tort claims arising in Kentucky, the state's one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Moore and Epperson were therefore required to file suit asserting their method-of-execution claims on or before March 31, 1999. Moore filed his complaint in this action on April 19, 2006. [R. 1] Epperson's complaint [R. 137] is deemed filed on March 19, 2007, the date he moved to intervene in this action and tendered his proposed complaint. *U.S. for Use and Benefit of Canion v. Randall & Blake*, 817 F. 2d 1188, 1192 (5th Cir. 1987) ("the filing of the motion for intervention, and not the later approval of the motion and actual filing of the complaint, determines the commencement of the action for purposes of the statute of limitations.") Because both complaints were filed eight or more years after the plaintiffs' claims accrued, a straightforward application of *Cooey* requires the conclusion that their claims must be

dismissed as time-barred.

In resisting this conclusion, Moore argues that he could not reasonably have known the factual basis for his claims until he was aware of all of the particulars of the execution protocol, a fact which he contends occurred no earlier than when the Franklin Circuit Court conducted its bench trial on Baze and Bowlings' identical claims. [R. 146 at 26-30]  The warden contends that this characterization is factually baseless, and that the type and amount of information available to Moore regarding Kentucky's lethal injection protocol was similar to that available regarding Ohio's lethal injection protocol and found sufficient to trigger claim accrual in *Cooey*. [R. 154 at 15-21]

Moore's position essentially adopts that taken by the dissent in *Cooey*. *Cooey*, 479 F. 3d at 424, 246 (Gilman, J., dissenting) ("A death-sentenced inmate knows or has reason to know of the facts of his method-of-execution challenge when he learns the details of the protocol that will be used for his execution.") (citing *Collyer v. Darling*, 98 F. 3d 211, 220 (6th Cir. 1996)).  Whatever the persuasive force of this view, the majority in *Cooey* rejected it, *Id*. at 423-24, and subsequent decisions by the Sixth Circuit have adhered to *Cooey's* central holding.  See *Wilson v. Rees*, No. 3:07-CV-78-KKC, 2009 WL 3188947 (E.D. Ky. Sept. 30, 2009),[3] *aff'd*, 620 F. 3d 699 (6th Cir.), *reh'g en banc denied*, 624 F. 3d 737 (6th Cir. 2010), *cert. denied*, 562 U.S. 1219 (2011).  See also *Broom v. Strickland*, 579 F. 3d 553, 556 (6th Cir. 2009) ("But *Cooey II* indicated that despite the failure of the ODRC to reveal details concerning execution protocols, Cooey and other similarly situated death-sentenced prisoners had the information required to file their claims no later than December 2001, when lethal injection became the sole method of execution in Ohio."); *Getsy v. Strickland*,

---

[3]  In *Wilson*, this Court also held that an inmate who, like Epperson and Moore, was sentenced to death before 1998 (and who under Kentucky law therefore has the right to choose electrocution as the method of execution) does not by virtue of possessing that right indefinitely delay accrual of a claim challenging the constitutionality of Kentucky's lethal injection protocol.

577 F. 3d 309, 312-313 (6th Cir. 2009).

Epperson argues that his method-of-execution claim did not and could not accrue until his second, rather than his first, sentence of death became final on direct review. But he offers no explanation how the pendency of ongoing criminal proceedings against him on different charges rendered his first conviction non-final, or otherwise prevented him from having a "complete and present cause of action" on March 31, 1998 to challenge the use of lethal injection to carry out the sentence of death he unquestionably faced at that juncture. *Cooey*, 479 F. 3d at 416. By March 31, 1998, Epperson could "file suit and obtain relief," *Wallace v. Kato*, 549 U.S. 384, 388 (2007), and his claims accrued at that time. Under this controlling Sixth Circuit precedent, Epperson and Moore's challenge to Kentucky's lethal injection protocol is time-barred.[4]

Even if the Court could disregard *Cooey* and instead applied more general rules of claim accrual, Moore and Epperson's claims would still plainly be time-barred. Like Baze, Bowling, and nearly every other inmate on Kentucky's death row, in July 2004, Epperson signed a group grievance challenging the identity, amount, and timing of the drugs used in Kentucky's lethal injection protocol. [R. 144-3] Shortly after the grievance was rejected, in August 2004 Baze and Bowling filed suit in Franklin Circuit Court challenging the constitutionality of the lethal injection protocol. Notwithstanding their claim that KDOC's "refusal to provide Plaintiffs with a complete copy of the execution procedures" violated their due process rights [R. 111-2 at 2], Baze and Bowling had gathered ample information about the protocol to formulate and file their complaint. The complaint set forth in detail aspects of the lethal injection protocol, including the chemicals involved, the amount, order,

---

[4] Moore and Epperson also contend that electrocution as a method of execution is facially unconstitutional [R. 1 at 59; R. 137-1 at 57-58], but the Court has already concluded that this claim must be dismissed because, under well-established Sixth Circuit precedent, the claim constitutes a *de facto* second or successive habeas corpus petition and is substantively meritless. [R. 139 at 12-16]

and rate of their administration, the means to be used to insert an I.V. line, possible insertion sites for the I.V. line, the absence of a training requirement for the execution team, and the medical equipment available to the execution team.  [R. 111-2, ¶¶7, 8, 13, 34, 44, 105, 111, 144]  Some of this information had been provided by the KDOC more than two years before, on May 14, 2002, in response to a simple Open Records request.  [R. 111-2 at 33]  No one, least of all Bowling and Baze, contended in 2004 that their claim had yet to accrue because they did not yet know every particular of the protocol.

By mid-2002, information was readily available about Kentucky's lethal injection protocol sufficient to provide notice to any death-sentenced inmate, including Moore and Epperson, of both the injury he faced and its cause.  *Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009) ("under federal law, the statute of limitations begins to run when the plaintiff knows *or has reason to know* of the injury which is the basis of his action.") (quoting *McCune v. City of Grand Rapids*, 842 F. 2d 903, 905 (6th Cir. 1988) (emphasis added, internal quotation marks omitted).  And by August 2004, not only was information about the underlying protocol readily available, but the plaintiffs would or should have been aware of pending litigation regarding it.  Because the statute of limitations begins to run upon the occurrence of the "event that should have alerted the typical lay person to protect his or her rights," *Trzebuckowski v. City of Cleveland*, 319 F. 3d 853, 856 (6th Cir. 2003), their claims accrued no later than this date.  A plaintiff need not have actual knowledge of every detailed minutiae which may support his claim before federal law deems his claim to have accrued.  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F. 3d 1380, 1386 (3d Cir. 1994) ("[T]he polestar of the discovery rule is not the plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff.");  *Baker v. Board of Regents of State of Kansas*, 991 F. 2d 628, 632 (10th Cir. 1993) ("[I]t is not necessary that a claimant know all

10

of the evidence ultimately relied on for the cause of action to accrue."); *Alexander v. Oklahoma*, 382 F. 3d 1206, 1215-16 (10th Cir. 2004). Because Epperson and Moore's claims were barred by the running of the limitations period long before they filed suit, these claims must be dismissed.

B.   *Baze v. Rees* established that Kentucky's lethal injection protocol as written and <u>implemented does not violate the Constitution</u>.

In his complaint, Moore takes issue with numerous particulars of Kentucky's lethal injection protocol, such as the chemicals chosen by Kentucky as part of its three drug procedure, the amounts to be administered, the asserted lack of safeguards to prevent or respond to a variety of potential unforeseen events, the methods to be used to obtain venous access, the sufficiency of the training given to members of the execution team, and the asserted lack of available equipment to engage in life-saving measures should there be a last-minute reprieve. [R. 1]

In his March 2007 motion to intervene in this action, Epperson asserted that "he is similarly situated [to Moore], asserts the same cause of action, and makes the same arguments … with the exception of compromised veins." [R. 137 at 2-3] Indeed, Epperson's complaint is a near-*verbatim* recitation of the allegations in Moore's complaint, asserting the same claims and omitting those paragraphs specific to Moore's conviction, compromised veins, and obesity. [R. 1 at ¶¶4-6, 31, 101-106, 233-234, 242-248, 332-335, 354-370, 381-394, 402, 495, 496, 507] Like Moore, and Baze and Bowling before him, Epperson contends that Kentucky's lethal injection protocol violates the Eighth Amendment in numerous particulars, including its choice of chemicals and the amount and method of their administration, as well as the asserted lack of training and equipment possessed by those personnel charged with carrying out the procedure.[5] [R. 1 at 52-59; R. 111-2 at 26-30;

---

[5]   Moore and Epperson both characterize each of their two dozen or more disagreements with the protocol or

11

R. 194 at 57-58]

On April 16, 2008, the United States Supreme Court issued its decision upholding Kentucky's lethal injection protocol against Baze and Bowling's Eighth Amendment challenge. *Baze v. Rees*, 553 U.S. 35 (2008). Shortly thereafter, Epperson and Moore filed a motion in this action conceding that the *Baze* decision precludes almost all of their claims, but contend that three survive. Moore alone contends that use of the lethal injection protocol at his execution could cause "a substantial risk of serious harm" because he has compromised veins, a medical condition not at issue in *Baze*. Both plaintiffs contend that the lethal injection protocol violates the Eighth Amendment because (1) it fails to require adequate training, procedures and equipment to save his life in the eventuality that, halfway through the procedure, a stay of execution is granted, and (2) future discovery in this case might reveal other, as-yet uncomplained of difficulties, such as that the execution team do not actually possess the training required by the protocol, or that the execution team might simply decide to disregard or not follow the protocol. [R. 211 at 2]

The plaintiffs' third "claim" amounts to little more than a request for further

---

concerns regarding its administration as an independent claim. But in truth they assert just one claim: that their execution under Kentucky's lethal injection protocol would violate the Constitution. Cf. *N.A.A.C.P. v. American Family Mut. Ins. Co.*, 978 F. 2d 287, 292 (7th Cir. 1992) ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate."). Indeed, plaintiffs' counsel argued to the Supreme Court that this was the correct approach:

> The question whether a State's execution procedures create an unnecessary risk of pain requires consideration of the cumulative risk created by all of the individual deficiencies in the procedures. In other words, the question is not, as the Kentucky courts framed it, the degree of risk that an individual problem will occur - such as improper preparation of the drugs or an infiltrated IV - but the degree of risk of severe pain caused by the cumulative effect of all of the deficiencies, combined with the danger created by the use of personnel who are unequipped to prevent or correct these foreseeable problems.

*Baze v. Rees*, 553 U.S. 35 (2008) (Brief for Appellant, 2007 WL 3307732, at *44 (Nov. 5, 2007)). Both the Kentucky Supreme Court and the United States Supreme Court treated Baze and Bowling's complaint, which likewise asserted over a dozen "claims," as presenting only a single claim challenging the protocol's constitutionality. *Baze v. Rees*, 217 S. W. 3d 207, 209 (2006) ("The single issue is whether the lethal injection provisions for execution protocol violate or threaten to violate the rights of Baze and Bowling to be free from cruel and unusual punishment."); *Baze v. Rees*, 553 U.S. 35, 47, 63 (2008).

discovery to assert even more new "claims," rather than an assertion that an already existing one survives analysis under *Baze*. And the Supreme Court's opinion made clear not only that adherence to Kentucky's protocol would not present constitutional concerns, but that plaintiffs had failed to demonstrate any legally-sufficient likelihood that it would not be followed to implicate the Eighth Amendment. *Baze*, 553 U.S. at 54-62 ("The risks of maladministration they have suggested – such as improper mixing of chemicals and improper setting of IVs by trained and experienced personnel – cannot remotely be characterized as 'objectively intolerable.' Kentucky's decision to adhere to its protocol despite these asserted risks, while adopting safeguards to protect against them, cannot be viewed as probative of the wanton infliction of pain under the Eighth Amendment.").

The Court does agree with Moore that, if his claims were not otherwise time-barred, the *Baze* decision would not necessarily preclude his single concern that the protocol might violate the Eighth Amendment unless adapted to account for his compromised veins or other physical characteristics unique to him. This is not, as the plaintiffs incredibly suggest, because the *Baze* decision was limited to the constitutionality of the lethal injection protocol as written, and did not involve a case where "the death-sentenced inmate concedes the constitutionality of the protocol as written but argues that the constitutional protocol is being implemented in an unconstitutional manner." [R. 213 at 2] This was precisely the claim litigated by Baze and Bowling in the state courts and the very claim squarely rejected by the Supreme Court. *Baze*, 553 U.S. at 40 ("Petitioners in this case … acknowledge that the lethal injection procedure, if applied as intended, will result in a humane death. They nevertheless contend that … the protocol's terms might not be properly followed, resulting in significant pain.") Rather, Moore's concern regarding his compromised veins is distinct from the challenge to the protocol involved in *Baze* because "details in the procedure might interact with the medical condition of the specific

13

condemned prisoner in constitutionally significant ways." *Cooey v. Strickland*, 544 F. 3d 588, 591 (6th Cir. 2008) (Gilman, J., concurring).

Finally, the plaintiffs are correct that because the Supreme Court chose to narrow the scope of the issues to be decided, *Baze v. Rees*, 552 U.S. 945 (2007), it did not reach the question whether the Constitution requires certain safeguards to be in place to resuscitate the condemned if a stay of execution is granted after the procedure has commenced.  This does not suggest that such a claim is plausible, cf. *Chester v. Wetzel*, No. 1:08-CV-1261, 2012 WL 5439054, at *8-9 (M.D. Penn. Nov. 6, 2012) ("The fact that other states provide a mechanism for resuscitation or stabilization of an inmate in the event that a stay of execution is ordered after the lethal drugs have been administered does not mean that all lethal injection protocols without such a procedure are unconstitutional.") (quoting *Evans v. Bennett*, 440 U.S. 1301, 1303 (1979) ("There must come a time, even when so irreversible a penalty as that of death has been imposed upon a particular defendant, when the legal issues in the case have been sufficiently litigated and relitigated that the law must be allowed to run its course.")), but only that it is not squarely foreclosed by the Supreme Court's decision in *Baze*.  The Court reaches no formal conclusions on these matters, but notes parenthetically that, even had the plaintiffs timely asserted their claims, only these two aspects of their claims could conceivably survive the Supreme Court's decision in *Baze*.

C. <u>Revisions to Kentucky's lethal injection protocol render plaintiffs' claims moot</u>.

Following the decision in *Baze*, the Kentucky Supreme Court held that KDOC's lethal injection protocol – the same one challenged Moore and Epperson in this action – was unenforceable unless promulgated as a formal regulation in conformity with Kentucky's Administrative Procedures Act.  *Bowling v. Kentucky Dept. of Corrections*, 301 S. W. 3d 478, 488-91 (Ky. 2009).  KDOC issued new formal regulations, the current version of which call

14

for the administration of a single drug in carrying out a sentence of death by lethal injection, with a two-drug protocol as a secondary method if neither of the drugs required for a single drug method is available.  501 K.A.R. 16:330 §§ 2(1), 3(1), 3(2).

Plaintiffs concede that the adoption of an entirely-new lethal injection protocol over the course of several years between 2010 and 2013 has rendered many aspects of their original claim moot.   However, they contend that certain concerns with the protocol have not been rendered moot because they remain unchanged, including the use of sodium thiopental (particularly in light of Moore's obesity and cardiovascular disease), the sufficiency of execution team's training, potential insertion of an I.V. line in the condemned's groin, taking up to an hour to establish intravenous lines, and the sufficiency of equipment and training if life-saving measures are called for by a stay of execution.  [R. 230]  It should be noted that many of these matters may not have been rendered moot by the changes to the protocol, but plaintiffs have already conceded that they cannot survive scrutiny under *Baze*.  [R. 211]   For example, the Supreme Court in *Baze* considered Kentucky's requirements for the qualifications of the execution team, now set forth in K.A.R. § 16:320, and the protocol's direction that the I.V. team has sixty minutes to establish primary and backup intravenous lines, and found that the protocol passed constitutional muster.  *Baze*, 553 U.S. at 54-55.

But dissection of the complaint into its particular arguments does not materially advance the inquiry.  Mootness doctrine, a corollary  to Article III's "case or controversy" requirement, is focused upon determining whether circumstances intervening during the pendency of the litigation have deprived the plaintiff of a personal stake in the outcome of the suit, *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990), or whether the issues presented in the original complaint are no longer "live," *Alvarez v. Smith*, 558 U.S. 87, 92 (2009).  The fact that the protocol originally challenged in plaintiffs' complaints is no

15

longer in force and will not be utilized in their execution unquestionably deprives them of a personal stake in its validity. Cf. *Theodore Roosevelt Conserv. P'ship v. Salazar*, 661 F. 3d 66, 78-79 (D.C. Cir. 2011).

Moore and Epperson argue that the entirety of their case is not moot because remnants of the original protocol remain in its present version. But as noted above, such individual aspects cannot be viewed in isolation. Rather, the parts of the protocol about which plaintiffs express concern are merely part of a larger coherent process to prepare for and carry out the execution. This includes ensuring that certain equipment is available, requiring training and practice for the execution team, establishing the methods, location, and timing for obtaining venous access, the amount and sequence of the drugs involved, and supervisory assessments of certain eventualities should they occur. Evaluation of all of these constituent parts, considered together, would inform determination of the single claim that the protocol as a whole, as written and/or as actually carried out, violates the Eighth Amendment. [R. 1 at 2]; *Baze v. Rees*, 553 U.S. 35 (2008) (Brief for Appellant, 2007 WL 3307732, at *44 (Nov. 5, 2007)). Thus, for example, plaintiffs' expressed desire to assert that execution team members lack the training and experience to carry out Kentucky's revised one- (or two-) drug protocols is, both factually and legally, a new and wholly-distinct claim from their prior claim that the execution team lacked the training or experience to carry out Kentucky's old three-drug protocol. Because the old informal protocol has been wholly supplanted by a new lethal injection protocol in formally adopted regulations, the nature of plaintiffs' disagreements with the protocol, both as written and as actually implemented, no longer present a live controversy. Thus, in this context, the Sixth Circuit has held that the adoption of a modified execution protocol rendered challenge to the previous version moot:

> As to the merits, the district court's stay order must be vacated because any

16

challenge to Ohio's three-drug execution protocol is now moot. Since Biros filed his lawsuit, the State has amended its lethal injection protocol. As noted, it now has a single-drug intravenous procedure and uses a two-drug intramuscular procedure as a back-up if it cannot access the veins of the individual.

*Cooey (Biros) v. Strickland*, 588 F. 3d 921, 923, *reh'g en banc denied*, 588 F. 3d 924 (6th Cir. 2009). See also *Ringo v. Lombardi*, 677 F. 3d 793, 797-98 (8th Cir. 2012) (holding that indefinite unavailability of drugs used in lethal injection protocol rendered challenge to protocol moot, citing *Cooey*). For these reasons, Moore and Epperson's challenge to Kentucky's since-superseded lethal injection protocol are also subject to dismissal on mootness grounds.

Accordingly, **IT IS ORDERED** that:

1.     The complaints of plaintiffs Brian Keith Moore [R. 1] and Roger Dale Epperson [R. 194] are **DISMISSED WITH PREJUDICE**.

2.     The Court will enter a Judgment contemporaneously with this Order.

3.     This action is **DISMISSED** and **STRICKEN** from the Court's docket.

4.     This is a final and appealable Order and there is no just cause for delay.

Dated October 13, 2015.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY